# BURDEAU *v.* McDOWELL.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE WESTERN DISTRICT OF PENNSYLVANIA.

No. 646.   Argued April 11, 12, 1921.—Decided June 1, 1921.

1. The United States may retain for use as evidence in the criminal prosecution of their owner, incriminating documents which are turned over to it by private individuals who procured them, without the participation or knowledge of any government official, through a wrongful search of the owner's private desk and papers in an office.  P. 474.

2. The provision of the Fourth Amendment forbidding unreasonable searches and seizures refers to governmental action; the Fifth Amendment secures the citizen from compulsory testimony against himself by protecting him from extorted confessions and examinations in court proceedings by compulsory methods.  P. 475.

Reversed.

APPEAL from an order of the District Court requiring that certain books and papers be impounded with the clerk and ultimately returned to the appellee, and enjoining officers of the Department of Justice from using them, or evidence derived through them, in criminal proceedings against him.  The facts are stated in the opinion, *post,* 470.

*The Solicitor General* for appellant:

It was not shown that any book, paper, or other document which was the private property of appellee was delivered to or was ever in the possession of appellant.

It is difficult to see how it can be said, with any show of reason, that there was any stealing of books and papers in this case.  Certainly there was no invasion of appellee's right of privacy.  Everything that was taken into possession was found in the office of the company

itself, with the exception of a few papers which were in the private office of appellee, but which it is admitted related to the business of the company, and were, therefore, such papers as the company was entitled to have delivered to it. They were, in fact, delivered to its auditor by appellee's representative.

If the employee has left papers of his own commingled with those of the company, he certainly cannot be said to be the sole judge of whether a particular paper is his or belongs to the company. He has brought about a condition under which the company has the right to inspect everything in the office before allowing anything to be removed. The inspection, therefore, is entirely lawful, and any information of crime or other matters which may be thus acquired is lawfully acquired and may properly be used. In the present case, appellee's representative was allowed to be present and make a list or take copies of all papers examined. A paper furnishing evidence of crookedness in the conduct of the company's affairs certainly relates to a matter in which the company is interested; and if the unfaithful employee has left it in the company's files, or in the company's office, there is no principle of law under which he can lawfully claim the right to have it returned to him. He has parted with the private possession of it, and his surrender of possession has not been brought about by any invasion of his constitutional rights.

Even if it could be said that the company or its representatives stole these papers from the appellee, this would not preclude their use in evidence if they should thereafter come to the hands of the federal authorities. The court found, as the evidence clearly required, that no department of the Federal Government had anything whatever to do with the taking of these papers and that no federal official had any knowledge that an investigation of any kind was being made, nor did such knowledge

come to any federal official until several months later. It would scarcely be insisted by anyone that, if the Government should discover that someone has stolen from another a paper which shows that the latter has committed a crime, the thief could not be called as a witness to testify to what he has discovered. If the paper were still in his possession, he could be subpœnaed to attend and produce the paper. The same thing is accomplished when the Government, instead of issuing a subpœna duces tecum, takes the paper and holds it as evidence. The rightful owner, while it is being so held, is no more entitled to its return than one who has been arrested for carrying a pistol is entitled to have the pistol returned to him pending a trial.

It must always be remembered that "a party is privileged from producing the evidence but not from its production." *Johnson* v. *United States*, 228 U. S. 457, 458.

Moreover, the Fourth Amendment protects only against searches and seizures which are made under governmental authority, real or assumed, or under color of such authority. If papers have been seized, even though wrongfully, by one not acting under color of authority, and they afterwards come to the possession of the Government, they may be properly used in evidence. *Weeks* v. *United States*, 232 U. S. 383; *Gouled* v. *United States*, 255 U. S. 298; *Boyd* v. *United States*, 116 U. S. 616; *Adams* v. *New York*, 192 U. S. 585; *Johnson* v. *United States*, *supra*; *Perlman* v. *United States*, 247 U. S. 7.

*Mr. E. Lowry Humes*, with whom *Mr. A. M. Imbrie* and *Mr. Rody P. Marshall* were on the brief, for appellee:

The issue in this proceeding was the title and right of possession of certain private papers alleged to have been stolen. The right to private property can be as effectually asserted against the Government as it can against

an individual, and the Government has no greater right
to stolen property than the private citizen. The receiver
of stolen goods has no right superior to the right of the
thief and the officer or agent of the Government who
receives stolen goods is in no better position to retain
the fruits and advantages of the crime than the humble
private citizen. *Boyd* v. *United States*, 116 U. S. 616, 624;
*Weeks* v. *United States*, 232 U. S. 383, 398. The right
which the appellee asserted was a right which the court
had jurisdiction to recognize and preserve.

The courts of the United States are open to the citizen
for the enforcement of his legal and constitutional rights,
and the right to private property may be asserted as a
mere legal right or it may be asserted under the guaran-
tees of the Constitution.

Abuses of individuals involving the deprivation of
the right to the possession, use and enjoyment of private
property are adequately redressed by the assertion of
the legal rights of the individual in either courts of law
or equity. The resort to the limitations of the Con-
stitution may be necessary to curb the excesses of the
Government.

In the case at bar there can be no question but that
replevin would lie against both the thief and the receiver
of the stolen goods to recover the private property of
the appellee. But the legal remedy by replevin would
have been inadequate as the injury could not be measured
in damages. It was necessary to resort to the equitable
powers of the court. The fact that the appellant happened
to be an officer or employee of the Government provided
no immunity to him that could prevent the owner of
private property from asserting his legal rights in either
a court of law or of equity. Quite to the contrary,—the
very fact that he was an officer of the court, enlarged
rather than diminished the authority of the court to
exercise control over and deal with the stolen papers

which had come into his possession as such officer of the court.

In this case the proceeding is properly a much more summary proceeding than in a case against a stranger to the court where the formality and difficulty of securing jurisdiction over both the person and the property might be involved.

The right of a court of equity to order and decree the return of private property and papers is well recognized, as is illustrated by the following cases. *McGowin* v. *Remington,* 12 Pa. St. 56; *Dock* v. *Dock,* 180 Pa. St. 14; *Pressed Steel Car Co.* v. *Standard Steel Car Co.,* 210 Pa. St. 464.

This is an independent proceeding having for its purpose the recovery of property in equity. The law side of the court provided no adequate remedy. The court in adjudicating the case properly found that the papers had been stolen; that they were private and personal papers of the appellee, and that they were in the hands of an officer of the court, and that the owner was entitled to their return. Up to this point no constitutional question is involved. It is, however, respectfully submitted that had the court below refused under the evidence and the facts in this case to order the return of the books and papers, and dismissed the proceeding, and if subsequently a criminal proceeding had been instituted against the appellee and the stolen books and papers been admitted in evidence over objection, then appellee would have been denied the constitutional right guaranteed him under the Fifth Amendment to the Constitution in that he would have been "compelled in" a "criminal case to be a witness against himself." If this conclusion is not correct then a means has been found by which private prosecutors and complainants and those personally interested in the prosecution and persecution of alleged offenders can, by the mere ac-

quiescence of the Government, deprive citizens of the
United States of the constitutional rights guaranteed to
them by both the Fourth and Fifth Amendments.

MR. JUSTICE DAY delivered the opinion of the court.

J. C. McDowell, hereinafter called the petitioner, filed
a petition in the United States District Court for the
Western District of Pennsylvania asking for an order for
the return to him of certain books, papers, memoranda,
correspondence and other data in the possession of
Joseph A. Burdeau, appellant herein, Special Assistant
to the Attorney General of the United States.

In the petition it is stated that Burdeau and his as-
sociates intended to present to the grand jury in and for
the Western District of Pennsylvania a charge against
petitioner of an alleged violation of § 215 of the Criminal
Code of the United States in the fraudulent use of the
mails; that it was the intention of Burdeau and his as-
sociates, including certain post-office inspectors coöper-
ating with him, to present to the grand jury certain
private books, papers, memoranda, etc., which were the
private property of the petitioner; that the papers had
been in the possession and exclusive control of the pe-
titioner in the Farmers Bank Building in Pittsburgh. It
is alleged that during the spring and summer of 1920 these
papers were unlawfully seized and stolen from petitioner
by certain persons participating in and furthering the
proposed investigation so to be made by the grand jury,
under the direction and control of Burdeau as special
assistant to the Attorney General, and that such books,
papers, memoranda, etc., were being held in the possession
and control of Burdeau and his assistants; that in the
taking of the personal private books and papers the
person who purloined and stole the same drilled the pe-
titioner's private safes, broke the locks upon his private

desk, and broke into and abstracted from the files in his offices his private papers; that the possession of the books, papers, etc., by Burdeau and his assistants was unlawful and in violation of the legal and constitutional rights of the petitioner. It is charged that the presentation to the grand jury of the same, or any secondary or other evidence secured through or by them, would work a deprivation of petitioner's constitutional rights secured to him by the Fourth and Fifth Amendments to the Constitution of the United States.

An answer was filed claiming the right to hold and use the papers. A hearing was had before the District Judge, who made an order requiring the delivery of the papers to the clerk of the court, together with all copies memoranda and data taken therefrom, which the court found had been stolen from the offices of the petitioner at rooms numbered 1320 and 1321 in the Farmers Bank Building in the City of Pittsburgh. The order further provided that upon delivery of the books, papers, etc., to the clerk of the court the same should be sealed and impounded for the period of ten days, at the end of which period they should be delivered to the petitioner or his attorney unless an appeal were taken from the order of the court, in which event, the books, papers, etc., should be impounded until the determination of the appeal. An order was made restraining Burdeau, Special Assistant Attorney General, the Department of Justice, its officers and agents, and the United States Attorney from presenting to the United States Commissioner, the grand jury or any judicial tribunal, any of the books, papers, memoranda, letters, copies of letters, correspondence, etc., or any evidence of any nature whatsoever secured by or coming into their possession as a result of the knowledge obtained, from the inspection of such books, papers, memoranda, etc.

In his opinion the District Judge stated that it was the

intention of the Department of Justice, through Burdeau
and his assistants, to present the books, papers, etc., to
the grand jury with a view to having the petitioner in-
dicted for the alleged violation of § 215 of the Criminal
Code of the United States, and the court held that the
evidence offered by the petitioner showed that the papers
had been stolen from him, and that he was entitled to the
return of the same. In this connection the District
Judge stated that it did not appear that Burdeau, or any
official or agent of the United States, or any of the De-
partments, had anything to do with the search of the
petitioner's safe, files and desk, or the abstraction there-
from of any of the writings referred to in the petition, and
added that "the order made in this case is not made be-
cause of any unlawful act on the part of anybody repre-
senting the United States or any of its Departments but
solely upon the ground that the Government should not
use stolen property for any purpose after demand made
for its return." Expressing his views, at the close of the
testimony, the Judge said that there had been a gross
violation of the Fourth and Fifth Amendments to the
Federal Constitution; that the Government had not
been a party to any illegal seizure; that those Amend-
ments, in the understanding of the court, were passed
for the benefit of the States against action by the
United States, forbidden by those Amendments, and
that the court was satisfied that the papers were
illegally and wrongfully taken from the possession of
the petitioner, and were then in the hands of the
Government.

So far as is necessary for our consideration certain
facts from the record may be stated. Henry L. Doherty
& Company of New York were operating managers of the
Cities Service Company, which company is a holding
company, having control of various oil and gas companies.
Petitioner was a director in the Cities Service Company

and a director in the Quapaw Gas Company, a subsidiary company, and occupied an office room in the building owned by the Farmers Bank of Pittsburgh. The rooms were leased by the Quapaw Gas Company. McDowell occupied one room for his private office. He was employed by Doherty & Company as the head of the natural gas division of the Cities Service Company. Doherty & Company discharged McDowell for alleged unlawful and fraudulent conduct in the course of the business. An officer of Doherty & Company and the Cities Service Company went to Pittsburgh in March, 1920, with authority of the president of the Quapaw Gas Company to take possession of the company's office. He took possession of room 1320; that room and the adjoining room had McDowell's name on the door. At various times papers were taken from the safe and desk in the rooms, and the rooms were placed in charge of detectives. A large quantity of papers were taken and shipped to the auditor of the Cities Service Company at 60 Wall Street, New York, which was the office of that company, Doherty & Company and the Quapaw Gas Company. The secretary of McDowell testified that room 1320 was his private office; that practically all the furniture in both rooms belonged to him; that there was a large safe belonging to the Farmers Bank and a small safe belonging to McDowell; that on March 23, 1920, a representative of the company and a detective came to the offices; that the detective was placed in charge of room 1320; that the large safe was opened with a view to selecting papers belonging to the company, and that the representative of the company took private papers of McDowell's also. While the rooms were in charge of detectives both safes were blown open. In the small safe nothing of consequence was found, but in the large safe papers belonging to McDowell were found. The desk was forced open, and all the papers taken from it.

The papers were placed in cases, and shipped to Doherty
& Company, 60 Wall Street, New York.

In June, 1920, following, Doherty & Company, after
communication with the Department of Justice, turned
over a letter, found in McDowell's desk, to the Depart-
ment's representative. Burdeau admitted at the hearing
that as the representative of the United States in the
Department of Justice he had papers which he assumed
were taken from the office of McDowell. The communi-
cation to the Attorney General stated that McDowell
had violated the laws of the United States in the use of
the mail in the transmission of various letters to parties
who owned the properties which were sold by or offered
to the Cities Service Company; that some of such letters,
or copies of them taken from McDowell's file, were in
the possession of the Cities Service Company, that the
Company also had in its possession portions of a diary
of McDowell in which he had jotted down the commis-
sions which he had received from a number of the trans-
actions, and other data which, it is stated, would be useful
in the investigation of the matter before the grand jury and
subsequent prosecution should an indictment be returned.

We do not question the authority of the court to
control the disposition of the papers, and come directly
to the contention that the constitutional rights of the
petitioner were violated by their seizure, and that having
subsequently come into the possession of the prosecuting
officers of the Government, he was entitled to their return.
The Amendments involved are the Fourth and Fifth,
protecting a citizen against unreasonable searches and
seizures, and compulsory testimony against himself.
An extended consideration of the origin and purposes of
these Amendments would be superfluous in view of the
fact that this court has had occasion to deal with those
subjects in a series of cases. *Boyd* v. *United States*, 116
U. S. 616; *Adams* v. *New York*, 192 U. S. 585; *Weeks* v.

*United States,* 232 U. S. 383; *Johnson* v. *United States,* 228 U. S. 457; *Perlman* v. *United States,* 247 U. S. 7; *Silverthorne Lumber Co.* v. *United States,* 251 U. S. 385; and *Gouled* v. *United States,* 255 U. S. 298.

The Fourth Amendment gives protection against unlawful searches and seizures, and as shown in the previous cases, its protection applies to governmental action. Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon other than governmental agencies; as against such authority it was the purpose of the Fourth Amendment to secure the citizen in the right of unmolested occupation of his dwelling and the possession of his property, subject to the right of seizure by process duly issued.

In the present case the record clearly shows that no official of the Federal Government had anything to do with the wrongful seizure of the petitioner's property, or any knowledge thereof until several months after the property had been taken from him and was in the possession of the Cities Service Company. It is manifest that there was no invasion of the security afforded by the Fourth Amendment against unreasonable search and seizure, as whatever wrong was done was the act of individuals in taking the property of another. A portion of the property so taken and held was turned over to the prosecuting officers of the Federal Government. We assume that petitioner has an unquestionable right of redress against those who illegally and wrongfully took his private property under the circumstances herein disclosed, but with such remedies we are not now concerned.

The Fifth Amendment, as its terms import is intended to secure the citizen from compulsory testimony against himself. It protects from extorted confessions, or examinations in court proceedings by compulsory methods.

The exact question to be decided here is: May the

Government retain incriminating papers, coming to it in the manner described, with a view to their use in a subsequent investigation by a grand jury where such papers will be part of the evidence against the accused, and may be used against him upon trial should an indictment be returned?

We know of no constitutional principle which requires the Government to surrender the papers under such circumstances. Had it learned that such incriminatory papers, tending to show a violation of federal law, were in the hands of a person other than the accused, it having had no part in wrongfully obtaining them, we know of no reason why a subpœna might not issue for the production of the papers as evidence. Such production would require no unreasonable search or seizure, nor would it amount to compelling the accused to testify against himself.

The papers having come into the possession of the Government without a violation of petitioner's rights by governmental authority, we see no reason why the fact that individuals, unconnected with the Government, may have wrongfully taken them, should prevent them from being held for use in prosecuting an offense where the documents are of an incriminatory character.

It follows that the District Court erred in making the order appealed from, and the same is

*Reversed.*

Mr. Justice Brandeis dissenting, with whom Mr. Justice Holmes concurs.

Plaintiff's private papers were stolen. The thief, to further his own ends, delivered them to the law officer of the United States. He, knowing them to have been stolen, retains them for use against the plaintiff. Should the court permit him to do so?

That the court would restore the papers to plaintiff if they were still in the thief's possession is not questioned. That it has power to control the disposition of these stolen papers, although they have passed into the possession of the law officer, is also not questioned. But it is said that no provision of the Constitution requires their surrender and that the papers could have been subpœnaed. This may be true. Still I cannot believe that action of a public official is necessarily lawful, because it does not violate constitutional prohibitions and because the same result might have been attained by other and proper means. At the foundation of our civil liberty lies the principle which denies to government officials an exceptional position before the law and which subjects them to the same rules of conduct that are commands to the citizen. And in the development of our liberty insistence upon procedural regularity has been a large factor. Respect for law will not be advanced by resort, in its enforcement, to means which shock the common man's sense of decency and fair play.