PEOPLE v. HARRY JAMES SMITH

OPINION OF THE COURT

1. CRIMINAL LAW—PROSECUTOR'S AUTHORITY—CHANGING STATUTE.

  A prosecutor has no authority to stipulate away the provisions
    of a duly enacted statute; a prosecution has no authority to
    delete or unilaterally change any part of a duly enacted
    statute.

2. CRIMINAL LAW—NARCOTICS—MARIJUANA—PROSECUTOR'S AUTHOR-
ITY—CHANGING STATUTE.

  Statute that defines marijuana as a narcotic cannot be changed
    by prosecutor's stipulations in open court that marijuana was
    not properly classified as a narcotic drug in the medical sense
    of the word (MCLA § 335.151).

3. SEARCHES AND SEIZURES—PRIVATE GUARDS—STANDARD OF CARE—
ADMISSIBILITY.

  Marijuana seized from the defendant by a private guard, not
    acting under the authority of any police agency, is admis-
    sible into evidence whether the guard's actions were reasonable
    or unreasonable, because a private guard is a private in-
    dividual and the standard of care placed on police officers
    regarding searches and seizures does not apply to private
    guards (US Const, Am 4).

---

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 42 Am Jur, Prosecuting Attorneys §§ 9–18.
[3–5] 47 Am Jur, Searches and Seizures §§ 52–73.
  Admissibility, in criminal case, of evidence obtained by search
    by private individual. 36 ALR3d 553.

4. Searches and Seizures—Private Guard—Method of Seizure—Reasonableness—Marijuana.

   *Marijuana seized by a private guard acting under no police agency was inadmissible in defendant's trial where the guard lunged at the defendant who was attempting to enter a roller skating rink, hit the defendant with several judo chops, forcibly twisted the defendant's arm behind the defendant's back, and knocked a packet containing the marijuana from the defendant's pocket, because the method of seizure, although by a private individual, offends a sense of justice.*

5. Evidence—Methods of Seizure—Admissibility.

   *Evidence seized by methods which offend a sense of justice ought not to be admissible in state trials.*

Appeal from Oakland, William John Beer, J. Submitted Division 2 April 7, 1970, at Lansing. (Docket No. 7217.)   Decided March 22, 1971.

Harry James Smith was charged with possessing or having under his control a narcotic drug.   Defendant's motion to suppress the evidence and quash the information granted.   The people appeal.   Reversed and remanded for trial.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Thomas G. Plunkett,* Prosecuting Attorney, *Dennis Donohue,* Chief Appellate Counsel, and *Bruce T. Leitman,* Special Assistant Prosecuting Attorney, for the people.

Before: McGregor, P. J., and Danhof and Larnard,* JJ.

Danhof, J.   On August 13, 1967, the defendant was charged with possessing or having under his control a narcotic drug, to wit, *Cannabis Sativa*

---

* Circuit judge, sitting on the Court of Appeals by assignment.

(marijuana) and not having a license therefor, contrary to MCLA § 335.153 (Stat Ann 1957 Rev § 18.1123).

On September 26, 1967, a preliminary examination was held and the defendant was bound over to circuit court for trial. On November 24, 1967, the defendant moved to suppress the evidence and quash the information. The motion was argued on March 11, 1968, and on March 13, 1968, the circuit judge denied the defendant's motion. Subsequently, on April 16, 1968, the defendant renewed his motion and the motion was granted on May 15, 1968, for reasons which will be discussed subsequently.

The facts disclosed at the preliminary examination show that at approximately 9:30 p.m. on the night of August 13, 1967, the defendant approached the Rolladium Drome skating rink in Pontiac, Michigan. He purchased a ticket and attempted to enter the skating rink. Over the entrance doors of the skating rink is a large sign which states that in order to enter the skating rink all persons must be searched. The sign is in large letters and has been posted for a long time. The skating rink employed a private guard, one Alvin Leon Gunn. Mr. Gunn was employed as a Sergeant by Young's Private Patrol and had been employed at the skating rink for some period of time. As the defendant approached Mr. Gunn at the doors of the skating rink Mr. Gunn told the defendant that the general procedures at the Rolladium Drome skating rink were that each person was searched as he entered. Mr. Gunn inquired of the defendant if this was his first time at the skating rink and the defendant answered no. Mr. Gunn advised the defendant that the search was voluntary, but that if he wished to enter the skating rink he would have to be searched. Mr. Gunn informed the defendant that he was going to search

him if the defendant decided to enter the skating rink. The defendant replied that he would not let Mr. Gunn search him. Thereafter the facts become less clear, but it appears the defendant took one step backwards and Mr. Gunn two steps backwards at which point the defendant placed his hands in his pockets whereupon Mr. Gunn "judo chopped" him and pushed him out into the lobby. The defendant still had his hand in his pocket. Mr. Gunn then took the defendant's hand and forced it behind him. At that time some aluminum foil dropped from the defendant's hand. The defendant was then handcuffed by Mr. Gunn at which time he picked up the aluminum foil.

Subsequently, the Waterford Township Police Department was called and when the police arrived the aluminum foil package was turned over by Mr. Gunn to a police officer. Mr. Gunn then finished searching the defendant in the presence of the two officers and discovered a pack of cigarette papers. These too were turned over to the Waterford Township Police Department. Mr. Gunn testified that the reason he "judo chopped" the defendant was that the defendant could have had a razor blade concealed in his hand, and that he was apprehensive of the defendant. Mr. Gunn testified that his work at the skating rink was of a private nature, that he was a private policeman licensed in the state of Michigan, and that he had a Detroit license to be a private patrol watchman under a Detroit ordinance.

It was stipulated by the prosecutor and defense counsel that the contents of the aluminum foil package were marijuana.

There is no evidence on the record to show that Mr. Gunn was working in conjunction with, or was in any way assisting or acting under the authority of the Waterford Township Police Department.

The defendant moved to suppress the evidence alleging that it had been obtained by an illegal search and seizure and moved to quash the indictment. At the hearing on this motion on March 11, 1968, the people made a three-fold argument:

(1) The motion should be denied because the search was not in fact unreasonable.

(2) That assuming *arguendo* that the search was unreasonable, the illegal search and seizure would not bar the marijuana from evidence since Mr. Gunn was not a police officer, nor was he working as the agent of the police, and, therefore, his conduct was not proscribed by either the Fourth Amendment of the United States Constitution or Const 1963, art 1, § 11.

(3) That assuming *arguendo* that the search and seizure were unreasonable, the Michigan constitutional proviso (Const 1963, art 1, § 11) allowed the introduction of the marijuana because it was a narcotic drug.

The circuit judge did not consider the first two theories advanced by the people, but denied the motion and held that the evidence was a narcotic drug and therefore was admissible under Const 1963, art 1, § 11.

On April 16, 1968, the defendant renewed the motions to suppress and quash and at that time the prosecutor stipulated in open court that marijuana was not properly classified as a narcotic drug in the *medical sense of the word*. The circuit judge then held that if it was agreed that marijuana was not properly classified as a medical narcotic the constitutional proviso contained in Const 1963, art 1, § 11 did not apply, and the motions to suppress and quash were granted and an order to that effect was entered on May 15, 1968. In the order the trial judge stated the following:

"This matter was heard on the record in open court. It appeared that the court previously denied a motion to suppress evidence and quash the information because of article 1, § 11 of the Michigan Constitution which reads as follows:

" 'The person, houses, papers and possessions of every person shall be secure from unreasonable searches and seizures. No warrant to search any place or to seize any person or things shall issue without describing them, nor without probable cause, supported by oath or affirmation. The provisions of this section shall not be construed to bar from evidence in any criminal proceeding any narcotic drug, firearm, bomb, explosive or any other dangerous weapon, seized by a peace officer outside the curtilage of any dwelling house in this state.'

"This court would have granted the earlier motion except for the provisions of the Michigan Constitution aforesaid and because in particular the court believed a narcotic drug was involved.

"Upon this subsequent argument and there being a stipulation on the record that marihuana medically is not a narcotic drug, the court therefore concludes the aforesaid constitutional provision is not applicable.

"The details of the arrest, search, and circumstances of obtaining the evidence are a matter of record at the preliminary examination and was noted in the pleadings.

"Now, therefore, this court concluding and by an absence within the constitutional sense of a narcotic drug and otherwise this court being prevailed upon that the matter of search, arrest, and circumstances of obtaining the evidence of the respondent was illegal; the motion to suppress evidence and quash the information hereby is granted."

The people filed an application for leave to appeal which was granted,

It is evident from reading the order entered by the circuit judge, although there is no opinion with the order, that the circuit judge had to make three decisions. First that marijuana was not a narcotic drug under Const 1963, art 1, § 11, and second that the search was unreasonable, and third, even though the search was conducted by a private person it was subject to the protection of the Fourth Amendment of the United States Constitution and Const 1963, art 1, § 11, and hence the evidence was to be excluded.

We determine that the action of the trial court was erroneous and we order the matter remanded for trial.

At the outset we note that part of the problem which has arisen is due to the fact that the prosecutor took it upon himself to stipulate that marijuana was not a narcotic drug in the medical sense of the word. We are not here concerned with a medical fact, but rather, an enactment of the Legislature. Laudable as it may be to raise this particular point we know of no authority which allows a prosecutor to endeavor to stipulate away the provisions of a duly-enacted statute. Such conduct on behalf of the prosecutor amounts to prosecutorial legislation, and while the prosecutor may have discretion as to whether or not to authorize a warrant we doubt that he has the power to alter a statute. Nor, on the basis of public policy, should he have authority to delete or unilaterally change any part of a duly-enacted statute. MCLA § 335.151 (Stat Ann 1970 Cum Supp § 18.1121), states:

"Section 1. The following words and phrases, as used in this act, shall have the following meanings, unless the context otherwise requires:

*     *     *

"(2) 'Narcotics' includes the following:

\*     \*     \*

"(f) All parts of the plant Cannabis Sativa. The term 'Cannabis' as used in this act shall include all parts of the plant Cannabis Sativa L., whether growing or not, the seeds thereof, the resin extracted from any part of such plant, and every compound, manufacture, salt, derivative, mixture or preparation of such plant, its seeds, or resin; but shall not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from seeds of such plant, other compound, manufacture, salt, derivative, mixture or preparation of such mature stalks, except the resin extracted therefrom, fibre, oil, or cake, or the sterilized seed of such plant which is incapable of germination. This definition is to include marihuana and all allied plants of the cannabis family which are habit forming."

MCLA § 335.153 (Stat Ann 1957 Rev § 18.1123), provides for the criminal offense for which the defendant is charged. Sections 335.153 and 335.151, *supra,* are all parts of PA 1952, No 266, and hence we hold that the Legislature validly enacted the statute pursuant to the police power of the state designed to protect the public health, safety, and welfare. *People* v. *Sinclair* (1971), 30 Mich App 473.

Const 1963, art 1, § 11, will no longer allow the marijuana to be introduced into evidence. See *People* v. *Andrews* (1970), 21 Mich App 731; *People* v. *Pennington* (1970), 383 Mich 611.

However, other grounds exist which require the reversal of the trial judge's decision. As previously stated, Mr. Gunn was a private guard, not a police officer, nor was he acting under any authority of any police agency. He was, therefore, a private individual. Thus, the evidence obtained is admissible into evidence whether his actions were reasonable or

unreasonable. In *Burdeau* v. *McDowell* (1921), 256
US 465, 475 (41 S Ct 574, 576; 65 L Ed 1048, 1051),
the United States Supreme Court said:

"The Fourth Amendment gives protection against
unlawful searches and seizures, and as shown in the
previous cases, its protection applies to governmen-
tal action. Its origin and history clearly show that
it was intended as a restraint upon the activities of
sovereign authority, and was not intended to be a
limitation upon other than governmental agencies;
as against such authority it was the purpose of the
Fourth Amendment to secure the citizen in the right
of unmolested occupation of his dwelling and the
possession of his property, subject to the right of
seizure by process duly issued.

"In the present case the record clearly shows that
no official of the Federal government had anything
to do with the wrongful seizure of the petitioner's
property, or any knowledge thereof until several
months after the property had been taken from him
and was in the possession of the Cities Service
Company. It is manifest that there was no invasion
of the security afforded by the Fourth Amendment
against unreasonable search and seizure, as what-
ever wrong was done was the act of individuals in
taking the property of another. A portion of the
property so taken and held was turned over to the
prosecuting officers of the Federal government. We
assume that petitioner has an unquestionable right
of redress against those who illegally and wrong-
fully took his private property under the circum-
stances herein disclosed, but with such remedies we
are not now concerned."

This position has been reaffirmed in *Berger* v.
*New York* (1967), 388 US 41, 53 (87 S Ct 1873, 1880;
18 L Ed 2d 1040, 1049), wherein Justice Clark
speaking for the majority stated:

"It is now well settled that 'the Fourth Amend-
ment's right of privacy has been declared enforce-

able against the states through the Due Process Clause of the Fourteenth' Amendment. *Mapp* v. *Ohio* (1961), 367 US 643, 655 (81 S Ct 1684, 1691; 6 L Ed 2d 1081, 1090; 84 ALR2d 933, 942). 'The security of one's privacy against arbitrary intrusion by the police—which is at the core of the Fourth Amendment—is basic to a free society.' *Wolf* v. *Colorado* (1949), 388 US 25, 27 (69 S Ct 1359, 1361; 93 L Ed 1782, 1785). And its 'fundamental protections * * * are guaranteed * * * against invasion by the states.' *Stanford* v. *Texas* (1965), 379 US 476, 481 (85 S Ct 506, 509; 13 L Ed 2d 431, 434). This right has most recently received enunciation in *Camara* v. *Municipal Court* (1967), 387 US 523, 528 (87 S Ct 1727, 1730; 18 L Ed 2d 930, 935). *'The basic purpose of this Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.' "* (Emphasis added.)

We concur in the reasoning of the United States Supreme Court and see no reason for going beyond it. To hold a private individual to the same standard of conduct as that required of a police officer who acts with, for, and on behalf of the authority of the state, would create a chaotic situation. We recognize that Mr. Gunn was a private policeman but unless, and until, the Legislature or the Supreme Court of the State of Michigan or the Supreme Court of the United States places upon private policemen the same standard of care as is placed on police officers they are acting in an individual and private capacity. Subsequently, neither the Fourth Amendment of the United States Constitution nor Const 1963, art 1, § 11 prohibits the introduction into evidence of the seized marijuana.

The order of the circuit court suppressing the evidence and quashing the information is reversed

and the case remanded for further proceedings consistent with this opinion.

Larnard, J., concurred.

McGregor, P. J. (*dissenting*). This writer cannot tolerate nor give his tacit approval to the guard's conduct in this case by allowing the marijuana seized into evidence. If it were assumed at its inception that the guard's actions were justified, in lunging at the defendant, administering several judo chops, forcibly twisting defendant's arm in back of him, and further wrestling the packet from his hand, the seizure was in no way related in scope to any circumstances which may have justified the initial interference.

On the basis of the record presented, the guard's actions were utterly lacking in foundation and constituted an egregious intrusion upon defendant's person. Evidence seized by methods which offend "a sense of justice" ought not be admissible in state trials. See *Rochin* v. *California* (1952), 342 US 165, 173 (72 S Ct 205, 210; 96 L Ed 183, 190; 25 ALR2d 1396, 1403), referring to *Brown* v. *Mississippi* (1936) 297 US 278 (56 S Ct 461, 80 L Ed 682).

As Justices Holmes and Brandeis aptly stated in their dissent in *Burdeau* v. *McDowell* (1921), 256 US 465, 477 (41 S Ct 574, 576, 577; 65 L Ed 1048, 1051):

"Respect for law will not be advanced by resort, in its enforcement, to means which shock the common man's sense of decency and fair play."

Alternatively, I would remand this matter to the lower court for further findings and a determination as to whether the peace officers were responsible

for the seizure of the marijuana. The record is unclear in several respects. It does not properly demonstrate why the officers were called to the scene nor does it properly relate the sequences of events following the seizure of the packet by the guard, *e.g.*, whether the guard knew the substance of the packet and related its contents to the peace officers when they arrived or whether the peace officers actually opened the packet and learned of its contents. Possibly if the latter were the situation, the responsibility for the search and seizure may have been that of the peace officers.