PEOPLE v EASTWAY

1. ARREST—WARRANTS—PRIVATE SECURITY OFFICERS—STATUTES.

A licensed private security officer in Michigan has the authority
to arrest without a warrant in the same manner as a public
police officer (MCLA 338.1080; MSA 18.185[30]).

2. SEARCHES AND SEIZURES—CONSTITUTIONAL LAW—ARREST—PRIVATE
SECURITY OFFICERS—POLICE OFFICERS.

Constitutional rights of due process and freedom from unreasona-
ble searches and seizures should be no less when the arrest and
search is by a private security officer with police powers than
when arrested or searched by a public police officer.

3. SEARCHES AND SEIZURES—EVIDENCE—EXCLUSIONARY RULE—PRI-
VATE SECURITY OFFICERS—POLICE OFFICERS.

Evidence discovered as a result of an unreasonable search and
seizure conducted by a private security officer should be sup-
pressed under the same exclusionary rule as would apply
where the search or seizure was made by a public police officer.

4. SEARCHES AND SEIZURES—WARRANTS—EXCLUSIONARY RULE—CON-
SENT.

A search and seizure where no warrant had been obtained is
unreasonable per se unless shown to be within one of the
exceptions to the exclusionary rule such as where the party
consented to the search.

5. CRIMINAL LAW—EVIDENCE—SILENCE.

A defendant's silence in the face of interrogation or accusatorial
remarks may not be used against him at trial.

6. CRIMINAL LAW—EVIDENCE—CRIMINAL RECORD—FINGERPRINTS—PA-
ROLE CARDS.

It is improper and has been held to be reversible error for the

REFERENCES FOR POINTS IN HEADNOTES
[1–4] 5 Am Jur 2d, Arrest §§ 26, 28.
[5] 29 Am Jur 2d, Evidence § 638 *et seq.*
[6] 21 Am Jur 2d, Criminal Law § 585.
[7] 21 Am Jur 2d, Criminal Law § 226.

prosecution to give the jury information as to a defendant's past criminal record by reference to his fingerprints as already in police files or his possession of a parole card for identification purposes.

7. CRIMINAL LAW—EVIDENCE—SUFFICIENCY OF EVIDENCE—QUESTION FOR JURY—APPEAL AND ERROR.

It is for the jury to weigh the evidence and determine its sufficiency and the Court of Appeals will not disturb the jury's determination unless it finds it to be against the great weight of the evidence.

Appeal from Kent, George V. Boucher, J. Submitted November 5, 1975, at Grand Rapids. (Docket No. 21916.) Decided February 26, 1976.

Donald R. Eastway was convicted of armed robbery. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Harold S. Sawyer,* Prosecuting Attorney, *Donald A. Johnston, III,* Chief Assistant Prosecuting Attorney, and *Craig S. Neckers,* Assistant Prosecuting Attorney, for the people.

*David A. Dodge,* for defendant.

Before: T. M. BURNS, P. J., and V. J. BRENNAN and M. F. CAVANAGH, JJ.

T. M. BURNS, P. J. Defendant was convicted of armed robbery. MCLA 750.529; MSA 28.797. He was sentenced to 5 to 15 years in prison and appeals as of right.

On May 12, 1974, an armed robbery occurred at a restaurant in Grand Rapids. One robber was wearing a ski mask and carried a chrome-plated handgun, another robber wore an army-type baseball cap and carried a black handgun. Approximately, $2,200 was stolen.

On May 15, 1974, two security guards at a shopping mall in Kent County, while patrolling the mall parking lot, saw Marla Reider sitting in a car with defendant smoking a marijuana cigarette. The guards approached the automobile and confronted the occupants with what they had seen. One of the security guards asked if there was any more marijuana, and defendant showed him two bags full of the substance. Defendant was then frisked and the Kent County Sheriff's Department was summoned by radio.

While waiting for the police, one of the security guards suggested that the police would search the automobile and asked defendant if there was any contraband inside. Defendant suggested that the guard look in the glove compartment. Miss Reider gave the keys to the guard and he unlocked the compartment, discovering a .22 caliber chrome-plated revolver and three bundles of money. The guard seized the gun, frisked defendant again, and handcuffed him. Upon arrival of the police, defendant was arrested for possession of marijuana.

A subsequent search of defendant's apartment produced a ski mask, army-type cap, and money wrappers like those used by the restaurant which was robbed. Defendant was then charged with armed robbery.

Prior to trial, defendant made a motion to suppress the evidence found in the glove compartment of Miss Reider's automobile, claiming such evidence to be the fruit of an unreasonable search and seizure. The trial court denied the motion.

On appeal, defendant makes several allegations of error, none of which mandates reversal.

*Whether the evidence seized by the private security guards should have been suppressed?*

Defendant argues that the gun and money found

in Miss Reider's automobile was discovered in an unreasonable search contrary to the United States and Michigan Constitutions, and hence, should have been suppressed as evidence under the exclusionary rule. The prosecutor contends that the exclusionary rule does not apply to unreasonable searches and seizures conducted by private individuals.

The search and seizure in this case was conducted by private security guards licensed by the state. By statute, any such licensed private security officer in Michigan has the authority to arrest without a warrant in the same manner as a public police officer. MCLA 338.1080; MSA 18.185(30). We are inclined to agree with defendant that his constitutional rights of due process and freedom from unreasonable searches and seizures should be no less when arrested or searched by a private security guard with police powers than when he is arrested or searched by a public police officer. The degree to which private security guards today supplement public police protection and the fact that they are permitted to carry deadly weapons and exercise broad powers of arrest, supports the argument that their conduct should be subject to the same limitations as public officers. There is ample authority for the proposition that the exclusionary rule does and should apply to evidence discovered as the result of an unreasonable search and seizure conducted by private security guards.[1] We need not reach that question, however, as the search and seizure complained of in this case was not unreasonable.

A warrantless search and seizure is unreasona-

---

[1] *See e.g., Griffin v Maryland,* 378 US 130; 84 S Ct 1770; 12 L Ed 2d 754 (1964), *Williams v United States,* 341 US 97; 71 S Ct 576; 95 L Ed 774 (1951), *DeCarlo v Joseph Horne & Co,* 251 F Supp 935 (WD Pa, 1966).

ble per se unless shown to be within one of the exceptions to the rule. *People v Reed,* 393 Mich 342, 362; 224 NW2d 867 (1975). One such exception, of course, is when the party consents to the search. Our reading of the record persuades us that not only did defendant and Miss Reider consent to the search of the automobile, but defendant virtually volunteered very incriminating information with little or no prompting and clearly without coercion or duress. Defendant cannot complain of a search which he invited. The motion to suppress was properly denied.

*Was defendant denied a fair trial because evidence was presented that defendant remained silent in the face of questioning after his arrest?*

The challenged testimony given by a deputy sheriff was as follows:

"We attempted to question Mr. Eastway on where the gun came from or the money. He didn't reply. We didn't get any answers. He indicated he didn't know, to the best of my recollection."

A defendant's silence in the face of interrogation or accusatorial remarks may not be used against him at trial. *People v Bobo,* 390 Mich 355; 212 NW2d 190 (1973). We do not think that the officer's fleeting reference to defendant's silence constituted using such silence against defendant. The overall effect of the testimony is that defendant did in fact reply to the question, stating that he didn't know where the gun came from.

If there was error here, it was harmless beyond a reasonable doubt. The comment by the officer was not clearly elicited by the prosecutor, the implication that defendant remained silent was weak at best, and a curative instruction was given by the judge. There is no indication of prejudice

which could reasonably be expected to affect the jury's verdict. See *People v Swan,* 56 Mich App 22; 223 NW2d 346 (1974). We find no reversible error.

*Was defendant denied a fair trial when references were made to his past criminal history?*

One prosecution witness testified that defendant had identified himself with a parole card. Another witness stated that defendant's fingerprints were on file at the police station at the time of his arrest. Giving the jury such information as to defendant's past criminal record is improper and has been held to be reversible error. See *People v Deblauwe,* 60 Mich App 103; 230 NW2d 328 (1975).

The error here, however, was harmless. Defendant did in fact take the stand and did testify as to a prior felony conviction and admitted selling marijuana. The improper testimony could not have added much to the damage. The improper testimony was unresponsive to the prosecutor's questions, defendant made no objection when the error occurred, and the trial judge gave a proper instruction. We find no reversible error.

*Was the conviction against the great weight of the evidence?*

Evidence was presented on every material element of the crime. It is for the jury, and not this Court, to weigh the evidence and determine its sufficiency. *People v Palmer,* 392 Mich 370; 220 NW2d 393 (1974). Reviewing the evidence presented at trial, we cannot say that the conviction was against the great weight of the evidence.

Affirmed.