ARTHUR MEISTER AND DOROTHY MEISTER, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3756–68, 5317–70.   Filed May 23, 1973.

*Jerome R. Miller* and *Walter D. LeVine*, for the petitioners.

*Robert N. Ginsberg, John J. Hopkins*, and *Barry N. Mosebach*, for the respondent.

QUEALY, *Judge:* The respondent determined deficiences in income taxes and additions thereto due from petitioners as follows:

| Year | Deficiency | Penalty | |
|------|-----------|---------|---------|
| | | Sec. 6653(a) | Sec. 6653(b) |
| 1960 | $32,742.03 | | $16,809.70 |
| 1961 | 59,543.26 | | 30,196.33 |
| 1962 | 49,971.23 | | 25,496.65 |
| 1963 | 58,749.60 | | 29,918.29 |
| 1964 | 70,245.65 | $3,512.28 | |
| | 271,251.77 | 3,512.28 | 102,420.97 |

The principal issue for decision is whether certain evidence obtained by the respondent with respect to the tax liability of petitioners for the years 1960 to 1964, inclusive, resulted from an illegal search and seizure on the part of respondent and is, therefore, inadmissible as having been obtained in violation of the petitioners' rights as guaranteed by the fourth and fifth amendments of the Constitution. Respondent concedes that the examination which resulted in the issuance of notices of deficiency in this case was predicated upon such evidence.

On the other hand, if such evidence was not obtained in violation of any rights of petitioners, it then becomes incumbent upon the Court to determine whether respondent has sustained the burden of proof that petitioners' returns for the taxable years 1960 to 1963 were false and fraudulent within the meaning of section 6653(b).[1] If so, in the absence of any proof on the part of petitioner to show the correct amount of the tax due for said years, the respondent's determination must be sustained. In the absence of proof of fraud by the respondent for the taxable years 1960 to 1963, inclusive, the assessment of any additional tax is barred by the statute of limitations.

With respect to the taxable year 1964, the petitioner presented no proof to show either that respondent's determination of deficiency or the addition to the tax with respect thereto was erroneous. In the absence of such proof, the respondent's determination, including the assessment of the addition to the tax under section 6653(a), must be sustained.

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

Some of the facts have been stipulated and, to the extent set forth herein, are found accordingly. Other facts relating to various deposits by petitioner with financial institutions, which were deemed to have been stipulated pursuant to Rule 31(b)(5) of the rules of this Court over the objection of petitioner, have been disregarded as having no probative value.

### FINDINGS OF FACT

The petitioners, Arthur Meister and Dorothy Meister, are husband and wife, who, at the time of the filing of the petition in docket No. 3756–68, resided in Newark, N.J. At the time the petition was filed in docket No. 5317–70, petitioners resided in East Orange, N.J.

Petitioners filed joint, individual income tax returns for the taxable years 1960, 1961, 1962, 1963, and 1964. The returns for each year were timely filed within the period granted by extension of time pursuant to petitioner's request.

At all times here involved, Arthur Meister (hereinafter termed petitioner)[2] conducted business as a sole proprietor in Newark, N.J., trading as Steelcraft Fluorescent & Stamping Co. (hereinafter termed Steelcraft), engaged in the manufacture and sale of fluorescent lighting fixtures.

Petitioner maintained a set of books and records in connection with his conduct of the sole proprietorship and operation of the business known as Steelcraft. Such books maintained by said petitioner consisted of the following: Cash receipts for check transactions, cash transactions, cash disbursements, general ledger, general journal, accounts receivable, accounts payable, sales journal, and special sales journal. The books and records of Steelcraft were kept on the accrual basis of accounting.

The petitioner's books and records were set up and examined at regular intervals by Mr. Herman Broder, petitioner's brother-in-law, a certified public accountant. Mr. Broder advised the petitioner with respect to costs and prices, made office audits of the books and records, and prepared the Federal income tax returns of the petitioner. In the course of preparing such returns, Mr. Broder prepared schedules showing the income and expenses of Steelcraft as reflected by its books and records.

Morris Abend (hereinafter referred to as Abend) was office manager and comptroller of Steelcraft from right after World War II up to the date of his death in February 1965. Prior to Abend's death, the current records were kept by him in a small safe at Steelcraft. Prior years' records were stored on the premises.

---

[2] Dorothy Meister is a party in this proceeding solely by virtue of having filed joint income tax returns with her husband in the years involved.

On December 17, 1964, while vacationing in Florida, Abend contacted the Internal Revenue Service in Miami, Fla., and verbally transmitted to a representative of the Intelligence Division certain information with respect to the Federal income tax returns theretofore filed by the petitioner. A memorandum setting forth what transpired at that time was duly transmitted to the Intelligence Division of the Internal Revenue Service at Newark, N.J. As a result thereof, Special Agent Dale Gardner of the Newark office was assigned in February 1965 to investigate the allegations made by Abend.

On February 15, 1965, Special Agent Gardner accompanied by another agent called at the home of Abend for the purpose of obtaining additional information. They were informed by Mrs. Abend that her husband had died on February 4, 1965. Due to the fact that Mrs. Abend was still distraught on account of the death of her husband, Special Agent Gardner did not pursue the matter on the occasion of that visit.

On March 11, 1965, Special Agent Gardner and his associate made a second visit to the Abend home. They discussed with Mrs. Abend the purpose of their visit, showing her the account of the interview with her husband at Miami, Fla. Mrs. Abend had no knowledge of any information which might have been in the possession of her husband. With her consent, they thereupon searched a cupboard in which Abend kept workpapers and other business records. They discovered two brown manila envelopes containing sheets of columnar workpaper on which Abend had purportedly transcribed records of Steelcraft. Special Agent Gardner removed this material from the Abend home.

On March 15, 1965, Special Agent Gardner and an associate made another visit to the Abend home in search of additional material. At this time, they obtained from Mrs. Abend a shopping bag containing what purported to be sales invoices of Steelcraft.

On March 24, 1965, Special Agent Gardner and an associate made a final visit to the Abend home. At this time, they obtained voluminous bundles of records including canceled checks and bound volumes of invoices purporting to represent transactions of Steelcraft. These records practically filled the trunk of the car.

At no time was any summons or subpoena issued to Mrs. Abend calling upon her to produce the records which were in the custody of her husband. No warnings were given to Mrs. Abend with respect to the possibility of self-incrimination. Mrs. Abend did not at any time object to the search and removal of these records by Special Agent Gardner and his associate. The material removed from Mrs. Abend's home included both transcripts presumably prepared by her husband on ledger sheets and purporting to be copies of records of

Steelcraft, as well as invoices, canceled checks, and other documents which purported to be a part of the actual records of Steelcraft. This material had been assembled and removed by Abend from petitioner's place of business without the authorization or consent of petitioner.

Petitioner's returns for the taxable years 1960 to 1963, inclusive, had previously been examined by representatives of the Internal Revenue Service. As a result of said examinations, additional taxes had been assessed for each of said years and had been paid by the petitioners.

The agents of the respondent made copies of the records and other materials which had been removed from the Abend home, some of which were ultimately returned to the petitioner pursuant to court order. Based upon such records, including workpapers prepared by Abend, the respondent then proceeded to reconcile the sales as reported in the returns of petitioners from the taxable years 1960 to 1963, inclusive, with the sales reflected on the petitioner's records. Verification of the latter was sought by contacting the customers of Steelcraft during the years in question.

As a result of the information obtained from the records which had been removed from the Abend home, Special Agent Gardner delivered to the petitioner under date of October 8, 1965, a statutory notice of reexamination of the returns of the petitioner for the taxable years 1960 to 1963, inclusive, with the request that the petitioner produce his books and records for the years involved herein. Neither the petitioners nor their representatives furnished any books or records to the respondent in response thereto.

During the taxable years 1960 to 1963, inclusive, the petitioner negotiated checks received in payment of certain specific accounts and obtained cash either in the full amount of the check or for part of the check in the form of a so-called "split deposit." The cash thus received was not reflected in either sales or income of Steelcraft as reported in the petitioner's Federal income tax returns for the taxable years 1960 to 1963, inclusive. Said accounts included the following:

| Customer | Omissions from income | | | |
|---|---|---|---|---|
| | 1960 | 1961 | 1962 | 1963 |
| Kenbert-Arpag | $30,917.03 | $40,070.14 | $24,309.60 | |
| Mercury Lighting | 8,282.25 | 12,104.56 | 7,286.10 | $8,578.22 |
| La-Mar Lighting | | | 11,266.12 | 1,242.50 |
| Spillite | | 2,438.90 | | |
| Crownlite | | 0 | | 2,657.75 |
| Totals | 39,199.28 | 54,613.60 | 42,861.82 | 12,478.57 |

In their Federal income tax return for the taxable year 1960, petitioners omitted from sales and income the sum of $57,361.13. A part of the resulting underpayment of tax was due to fraud within the meaning of section 6653(b). Said return was false and fraudulent with intent to avoid tax within the meaning of section 6501(c).

In their Federal income tax return for the taxable year 1961, petitioners omitted from sales and income the sum of $93,684.95. A part of the resulting underpayment of tax was due to fraud within the meaning of section 6653(b). Said return was false and fraudulent with intent to avoid tax within the meaning of section 6501(c).

In their Federal income tax return for the taxable year 1962, petitioners omitted from sales and income the sum of $79,043.27. A part of the resulting underpayment of tax was due to fraud within the meaning of section 6653(b). Said return was false and fraudulent with intent to avoid tax within the meaning of section 6501(c).

In their Federal income tax return for the taxable year 1963, petitioners omitted from sales and income the sum of $90,774.49. A part of the resulting underpayment of tax was due to fraud within the meaning of section 6653(b). Said return was false and fraudulent with intent to avoid tax within the meaning of section 6501(c).

In their Federal income tax return for the taxable year 1964, petitioners omitted from sales and income the sum of $101,648.13. The resulting underpayment of tax was due to negligence or intentional disregard of the rules and regulations within the meaning of section 6653(a).

OPINION

In this case the respondent in substance concedes that the issuance of the notice of reexamination of the years 1960 to 1963, inclusive, pursuant to section 7605(b) and the determination of deficiency with respect to those years, as well as the year 1964, were predicated upon certain information, including some records belonging to Steelcraft,[3] which came into the possession of the respondent as the result of a "search and seizure" of material then in the physical possession of Mrs. Abend, wife of the deceased bookkeeper. Petitioner contends that such records were obtained as the result of an illegal search and seizure within the meaning of the fourth amendment [4] and in violation of

---

[3] Since Steelcraft was a sole proprietorship, we are not here concerned with the distinction between the individual records of a taxpayer and those of a corporate business.

[4] The fourth amendment provides as follows:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

petitioner's privilege against self-incrimination protected by the fifth amendment.[5]

We are thus faced with the question whether the documentary evidence admittedly crucial to the respondent's case was obtained in violation of petitioner's rights under the fourth and fifth amendments, and, if so, whether such "tainted" evidence may be resorted to by the respondent in a civil proceeding before this Court.

At the outset we will assume that the investigation of the petitioner's income tax returns by the respondent was undertaken with a view towards possible criminal prosecution. Respondent sent out two special agents whose primary function was to investigate criminal violations of the internal revenue laws. However, we find nothing in their actions which could be construed as an infringement of petitioner's constitutional rights under either the fourth or the fifth amendment. We need not, therefore, reconsider whether the fifth amendment may be relied upon to exclude evidence in a civil proceeding before this Court. See *John Harper*, 54 T.C. 1121 (1970) ; *Hugo Romanelli*, 54 T.C. 1448 (1970), reversed and remanded 466 F. 2d 872 (C.A. 7, 1972) ; also *Efrain T. Suarez*, 58 T.C. 792 (1972).

In the case before us, the petitioner was not called upon to produce anything. The evidence relied upon by the respondent was no longer in his possession either actively or constructively. It had been taken from his premises without his knowledge and had come into the possession of Mrs. Abend, a disinterested third party. The right of the respondent to rely upon and to utilize such evidence is established by the recent decision of the Supreme Court in *Couch* v. *United States*, 409 U.S. 322 (1973).

In the *Couch* case, the records of the taxpayer were in the custody of an accountant, not an employee of the taxpayer, who regularly prepared her income tax returns. The Internal Revenue Service sought to subpoena those records. The taxpayer intervened, seeking to invoke the privilege against self-incrimination. In denying the taxpayer's right to assert the privilege, the Supreme Court held that the protection against self-incrimination in the fifth amendment went to the person seeking to assert that privilege, and not to the evidence itself. Since the taxpayer had entrusted possession of her records to an accountant, the issuance of the summons to the accountant did not con-

---

[5] The fifth amendment provides as follows :

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger ; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb ; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law ; nor shall private property be taken for public use without just compensation."

stitute compulsion upon the taxpayer to do anything. The Supreme Court said:

In the case before us the ingredient of personal compulsion against an accused is lacking. The summons and the order of the District Court enforcing it are directed against the accountant. He, not the taxpayer, is the only one compelled to do anything. And the accountant makes no claim that he may tend to be incriminated by the production. Inquisitorial pressure or coercion against a potentially accused person, compelling her, against her will, to utter self-condemning words or produce incriminating documents is absent. In the present case, no "shadow of testimonial compulsion upon or enforced communication by the accused" is involved. *Schmerber* v. *California*, 384 U.S. 757, 765 (1966).

The divulgence of potentially incriminating evidence against petitioner is naturally unwelcomed. But petitioner's distress would be no less if the divulgence came not from her accountant but from some other third party with whom she was connected and who possessed substantially equivalent knowledge of her business affairs. The basic complaint of petitioner stems from the fact of divulgence of the possibly incriminating information, not from the manner in which or the person from whom it was extracted. Yet such divulgence, where it did not coerce the accused herself, is a necessary part of the process of law enforcement and tax investigation.

Mrs. Abend must be regarded as a disinterested third party against whom no proceeding was ever pending or contemplated. She had no reason to request a summons to produce the material or to resist such a summons if served upon her. Her action in voluntarily permitting the respondent's agents to come into her home and remove the material did not impinge upon any rights of the petitioner. *United States* v. *White*, 477 F. 2d 757 (C.A. 5, 1973). She had no interest in the matter and voluntarily permitted the respondent's agents to come into her home and remove the material in question. There is no analogy to the facts in *Efrain T. Suarez, supra*, relied on by petitioner, where the local authorities broke into the premises of the petitioner without a search warrant.

The petitioner contends that the records were wrongfully removed by Abend from the premises of Steelcraft, without authority and completely outside the scope of his employment. This would not constitute a bar to the admissibility of such records in this proceeding. *Burdeau* v. *McDowell*, 256 U.S. 465 (1921) ; *United States* v. *Goldberg*, 330 F. 2d 30 (C.A. 3, 1964), certiorari denied 377 U.S. 953 (1964).

Petitioner also contends that the notice of deficiency with respect to the years 1960 to 1963, inclusive, is defective in that the respondent failed to comply with the requirements of section 7605 (b) in the issuance of the notice of reexamination.[6] Petitioner argues that such notice

---

[6] Sec. 7605 (b) provides:

(b) RESTRICTIONS ON EXAMINATION OF TAXPAYER.—No taxpayer shall be subjected to unnecessary examination or investigations, and only one inspection of a taxpayer's books of account shall be made for each taxable year unless the taxpayer requests otherwise or unless the Secretary or his delegate, after investigation, notifies the taxpayer in writing that an additional inspection is necessary.

was issued *after*, and not *before*, the decision to reexamine petitioner's returns for those years.

If we look to the chronological sequence of events which preceded the issuance of the notice of reexamination, the facts belie this argument. Initially Abend contacted the Internal Revenue Service at Miami and stated that he had certain information relating to the income tax returns of the petitioner, showing the deliberate omission of sales and income from those returns, which he proposed to turn over to the Internal Revenue Service. In due course, a memorandum of this initial interview was forwarded to the Internal Revenue Service at Newark for further investigation. Upon attempting to contact Abend, the revenue agent to whom the matter had been assigned learned of Abend's death. Thereafter, the agents made several visits to Abend's home from which, without objection on the part of Mrs. Abend, they removed certain working papers and records.

Before formally initiating a reexamination of petitioner's returns, the respondent thereupon set about to analyze and to verify the allegations of the deceased informant. Being satisfied that there was reasonable cause, the respondent thereupon notified the petitioner of the reexamination of his returns in accordance with section 7605(b).

This Court can find nothing contrary to the statute in the procedure which was followed prior to the issuance of the notice of reexamination. In fact, failure to comply with the statute might well result if such notices were issued solely on the basis of an unsubstantiated statement by an informant. In this case, the respondent first made an effort to substantiate Abend's allegations. After an independent investigation, the respondent determined reasonable cause. After fully complying with the requirements of the statute, proper notice was thereupon served on the petitioner calling upon him to make available his records for purposes of the proposed reexamination of his returns. See *United States* v. *Powell*, 379 U.S. 48 (1964); *Hinchcliff* v. *Clarke*, 371 F. 2d 697 (C.A. 6, 1967).

With respect to the question whether petitioner, in fact, deliberately failed to report sales and income of Steelcraft for the taxable years 1960 to 1963, inclusive, the respondent has the burden of proof. In meeting that burden, the respondent submitted evidence from which the Court has concluded that the petitioner omitted sales and income on account of the following customers:

| Customer | Omissions from income | | | |
|---|---|---|---|---|
| | 1960 | 1961 | 1962 | 1963 |
| Kenbert-Arpag | $30,917.03 | $40,070.14 | $24,309.60 | |
| Mercury Lighting | 8,282.25 | 12,104.56 | 7,286.10 | $8,578.22 |
| La-Mar Lighting | | | 11,266.12 | 1,242.50 |
| Spillite | | 2,438.90 | | |
| Crownlite | | 0 | | 2,657.75 |
| Totals | 39,199.28 | 54,613.60 | 42,861.82 | 12,478.57 |

In general, the evidence offered by the respondent entailed an analysis and comparison of the total purchases by said customers as reflected on their records with the total sales to said customers as reflected in the sales and income shown on the income tax returns of the petitioner for the years in question. Respondent then accounted for the difference by showing that some checks were either negotiated for cash in toto and not reflected in income on the books of Steelcraft, or negotiated in the form of a split deposit wherein a part of the total amount was received in cash and similarly not reflected in income on the books of Steelcraft.

While the proof offered by the respondent did not go to the entire amount which petitioner is alleged to have omitted from income in each of the years in question, and was admittedly based upon secondary evidence or copies of records where the originals no longer were available, the petitioner had ample opportunity to account for or to refute such evidence.

Instead of meeting the issue, the petitioner testified that he had no knowledge with respect to the books and records of the business. He would have this Court believe that whatever was done was the work of Abend, the deceased bookkeeper. In light of the fact that Broder, the accountant, who was also petitioner's brother-in-law and subsequently became a partner in the business, regularly examined the financial records of Steelcraft, we find such testimony on the part of petitioner wholly lacking in credibility.

In addition, the petition contended that all of the books and records with respect to the years 1960 to 1963, inclusive, *and even the books and records with respect to the year 1964*, were taken from the premises of Steelcraft without his knowledge. Likewise, Broder testified that his working papers, which presumably would have been equally informative, disappeared with the records. It is implied that Abend took these records.

We find such testimony wholly lacking in credibility. In the first place, Broder must have had access to the books and records for the year 1964 when he prepared the schedules for petitioner's tax return for that year. Abend died on February 4, 1965. The Court finds it difficult to believe that Broder could have prepared the schedules for the 1964 tax return if Abend had removed those records from the premises from Steelcraft prior to his death. In addition, whatever records were in the possession of Abend at his death were surrendered to the Internal Revenue Service by Mrs. Abend. Those records were, in turn, turned over to the petitioner. Any records taken by Abend would have been recovered upon his death.

Considering the record as a whole, the conclusion is inescapable that the petitioner deliberately set about to understate sales and income for the taxable years 1960 to 1963, inclusive, and thereby to avoid the

payment of tax thereon. The income tax returns filed by the petitioner for those years were false and fraudulent with intent to evade tax. Since the petitioner has failed to submit any proof with respect to his correct tax liability for such years, the determination of the respondent is sustained both with respect to the deficiencies and with respect to the additions to the tax under section 6653(b).

With respect to the taxable year 1964, the petitioner has the burden of proof. With respect to such year, petitioner failed to present any evidence showing that the respondent's determination was erroneous. Accordingly, the determination of the respondent with respect to the deficiency and with respect to the addition to the tax under section 6653(a) is sustained.

Reviewed by the Court.

*Decisions will be entered for the respondent.*