Arthur MEISTER and Dorothy Meister, Appellants,

v.

**COMMISSIONER OF INTERNAL REVENUE.**

Nos. 73–1851, 73–1852.

United States Court of Appeals, Third Circuit.

Argued May 30, 1974.

Decided Oct. 16, 1974.

Jerome R. Miller, Gutkin & Miller Milburn, N.J., W. Bradley Ward, Herbert S. Mednick, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for appellants.

Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks, Bennet N. Hollander, William S. Estabrook, III, Tax Div., Dept. of Justice, Washington, D.C., for appellee.

Before KALODNER, ROSENN and HUNTER, Circuit Judges.

OPINION OF THE COURT

KALODNER, Circuit Judge.

The primary question presented is whether the Tax Court erred in rejecting the appellant-taxpayers' contention that critical documentary evidence in the instant civil tax proceeding was inadmissible because it was obtained in violation of their Fourth and Fifth Amendment rights in that it had been wrongfully taken from them by their bookkeeper and later allegedly illegally "seized" by the Government in a search of the then deceased bookkeeper's home where they were found.

A second question presented is whether the Tax Court erred in admitting into evidence the bookkeeper's "workpapers" over the "hearsay" objection of the appellants.

The facts as found by the Tax Court in its reviewed opinion at 60 T.C. 286 (1973) are as follows:

The appellant-taxpayers, Arthur Meister and Dorothy Meister are husband and wife. They filed joint income tax returns for the years 1960–1964, inclusive, here involved. Included in these returns was the income derived from the Steelcraft Fluorescent & Stamping Co. ("Steelcraft"), of which Arthur Meister ("Meister")[1] was sole proprietor. Steelcraft engaged in the manufacture and sale of fluorescent lighting fixtures.

Meister maintained a set of books and records in connection with his operation of Steelcraft. They included cash receipts for check transactions, cash transactions, cash disbursements, general ledger, general journal, accounts receivable, accounts payable, sales journal, and special sales journal.

Steelcraft's books and records were set up and examined at regular intervals by

---

1. The appellants Arthur Meister and Dorothy Meister are husband and wife. Dorothy Meister is a party to this proceeding by virtue of the fact that she filed joint income tax returns with her husband for the taxable years involved.

one Herman Broder, Meister's brother-in-law, a certified public accountant. Broder made office audits of the books and records. He prepared Meister's federal income tax returns and in the course of doing so prepared schedules showing the income and expenses of Steelcraft as reflected by its books and records.

Morris Abend was office manager and comptroller of Steelcraft from right after World War II to the date of his death on February 4, 1965. Current records were kept by him in a small safe at Steelcraft. Prior years' records were stored on the premises.

On December 17, 1964, while on vacation in Florida, Abend contacted the Internal Revenue Service ("I.R.S.") in Miami, and, in the course of an interview with a representative of the Intelligence Division, disclosed information relating to Meister's income tax returns. As a result of this interview, Special Agent Dale Gardner of the I.R.S. office in Newark, New Jersey was assigned in February of 1965 to investigate allegations made by Abend.

On February 15, 1965, Gardner and another agent called at the Abend home seeking additional information. They were told by Mrs. Abend that her husband had died on February 4, 1965. The agents decided not to pursue the matter further at that time since Mrs. Abend was still distraught over the loss of her husband.

The agents returned on March 11, 1965 and discussed the purpose of their visit with Mrs. Abend, showing her an account of the interview between Abend and the Florida I.R.S. agent. Mrs. Abend had no knowledge of any information which her husband might have possessed. She consented to the agents' search of a cupboard in which Abend had kept various workpapers and other business records. The agents found and removed two brown manila envelopes containing sheets of columnar workpapers on which Abend had purportedly transcribed records of Steelcraft relating to its sales and cash receipts.

Gardner returned to the Abend home on March 15, 1965, when he obtained from Mrs. Abend a shopping bag containing what purported to be Steelcraft sales invoices. On March 24, 1965, Gardner and a fellow agent made a final visit to the Abend home. They then obtained voluminous bundles of records including cancelled checks and bound volumes of Steelcraft invoices.

No summons or subpoena was ever issued to Mrs. Abend calling for her production of the papers obtained from the Abend home. However, she at no time objected to either the search or the removal of these papers from her home. In resumé, the material removed from Mrs. Abend's home consisted of (1) Abend's *workpapers* which purportedly transcribed Steelcraft's sales cash receipts; and (2) *actual* records of Steelcraft, viz., invoices, cancelled checks and other documents, which had been wrongfully removed by Abend from Steelcraft's offices.

Internal Revenue Service agents made copies of *all* the material removed from the Abend home. The records which had been wrongfully removed by Abend from the Steelcraft offices were ultimately returned to Steelcraft pursuant to a court order in a proceeding instituted by Meister for their recovery in the United States District Court for the District of New Jersey.

The copies made of the removed material were utilized by the Government in checking the Steelcraft sales and receipts which they reflected against the sales as reflected in Meister's income tax returns for 1960–1963. Verification of the former was sought by contacting the customers of Steelcraft during the years involved.

In the interim, on October 8, 1965, Gardner delivered a statutory notice of reexamination of Meister's tax returns for 1960–1963, inclusive, with a request for the reproduction of Meister's books and records for those years. No books or records were ever provided in response to this request.

The Tax Court found that Meister "[d]uring the taxable years 1960 to 1963, inclusive, . . . negotiated checks received in payment of certain specific accounts and obtained cash either in the full amount of the check or for part of the check in the form of a so-called 'split deposit,' " and that "the cash thus received was not reflected in either sales or income of Steelcraft as reported in the petitioner's [Meister's] Federal income tax returns for the taxable years 1960 to 1963, inclusive."

The Tax Court further found that Meister's Federal income tax returns for the years 1960 through 1963 were "false and fraudulent with intent to avoid tax" in that they "omitted from sales and income" the sum of $57,361.13 for the year 1960; $93,684.95 for the year 1961; $79,043.27 for the year 1962; and $90,774.49 for the year 1963.

It also found that Meister omitted sales and income in the sum of $101,648.13 in his income tax return for the taxable year 1964 and that the resulting underpayment of tax was due to negligent or intentional disregard.

In sustaining the Commissioner's deficiency determinations, plus penalties, in the aggregate sum of $377,185.02, the Tax Court held in its Opinion that the Commissioner had met the burden of proof imposed upon him to establish that Meister had deliberately failed to report sales and income for the taxable years 1960 through 1963,[2] and that insofar as the taxable year 1964 was concerned, Meister had failed to present any evidence that the Commissioner's determination as to that year was erroneous in disregard of Meister's burden of proof.

Meister here contends that the Tax Court erred in admitting into evidence copies of Steelcraft documents purloined by Abend and Abend's workpapers. He says that his Fourth Amendment rights were violated when Abend wrongfully removed the documents and again when the Internal Revenue Service agents "seized such documents without legal process from his employee's home after his death," and that his Fifth Amendment right against self-incrimination was violated when the Steelcraft documents were admitted into evidence. Meister further contends that the Steelcraft documents and Abend's workpapers were erroneously admitted into evidence under the business records exception to the hearsay rule.

█ The essence of Meister's Fourth Amendment contention is that (1) Abend's purloining of the Steelcraft documents "can be imputed to the Government" because it was allegedly in consequence of Treasury Regulations providing for payment of an informer's fee; and (2) Meister was and continued to be the owner of the purloined documents and thus their removal from the Abend home without a search and seizure warrant was unlawful, albeit Mrs. Abend acquiesced in their removal. The essence of Meister's Fifth Amendment contention is that the purloined documents "are encompassed within the scope of the privilege against self-incrimination."

We agree with the Tax Court's holding that Meister's Fourth and Fifth Amendment rights were not violated in the admission into evidence of the purloined documents for these reasons:

█ It was settled in the landmark case of Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921) that the Government may retain for use against their owner in a criminal proceeding incriminating documents which were stolen by private individuals, without governmental knowledge or complicity, and turned over to the Government.

---

2. The Commissioner had this burden because the statute of limitations with respect to taxable years 1960 through 1963 would have run unless he demonstrated that each of the Meisters' returns for those years was a "false and fraudulent return with the intent to evade tax" within the meaning of Section 6501(c) (1) Internal Revenue Code of 1954 (26 U.S. C.).

*Burdeau* specifically held that (1) the Fourth Amendment proscription against unreasonable search and seizure applies only to *governmental* action, and thus it is not contravened by independent actions of individuals, conducted without governmental knowledge; and (2) the Fifth Amendment does not preclude use in a criminal prosecution of incriminating papers wrongfully taken from their owner by private individuals without Government knowledge or participation. In so holding, the Court said in relevant part:

"The Fourth Amendment gives protection against unlawful searches and seizures, and as shown in the previous cases, *its protection applies to governmental action.*

". . . *It is manifest that there was no invasion of the security afforded by the Fourth Amendment against unreasonable search and seizure, as whatever wrong was done was the act of individuals in taking the property of another.*

"*The Fifth Amendment, as its terms import is intended to secure the citizen from compulsory testimony against himself.* It protects from extorted confessions, or examinations in court proceedings by compulsory methods." 256 U.S. at 475, 41 S.Ct. at 576 (emphasis supplied).

. . . . . .

"We know of no constitutional principle which requires the Government to surrender the papers under such circumstances. *Had it learned that such incriminatory papers, tending to show a violation of federal law, were in the hands of a person other than the accused, it having had no part in wrongfully obtaining them, we know of no reason why a subpoena might not issue for the production of the papers as evidence. Such production would require no unreasonable search or seizure, nor would it amount to compelling the accused to testify against himself.*

"The papers having come into the possession of the Government without a violation of petitioner's rights by governmental authority, *we see no reason why the fact that individuals, unconnected with the Government, may have wrongfully taken them, should prevent them from being held for use in prosecuting an offense where the documents are of an incriminatory character.*" 256 U.S. at 476, 41 S.Ct. at 576 (emphasis supplied).

In United States v. Goldberg, 3 Cir., 330 F.2d 30, *cert. denied,* 377 U.S. 953, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964), a case substantially similar to the instant case, we cited and applied the *Burdeau* principle that the Fourth Amendment restrains only "governmental action." In *Goldberg,* three employees took records belonging to their employer and turned those records over to the Government. The Government used those records in prosecuting Goldberg for numerous counts of tax evasion. In upholding the admission into evidence of the stolen records, we noted that "the Government had no part or knowledge that they [the employees] were going to take the records they turned over." 330 F.2d at 35. Accordingly, we held that "the documents and records were clearly admissible under Burdeau v. McDowell." *Id.* As an alternative basis for our holding, we stated that "*additionally,* the records were not personal records of the appellant, but belonged to the various corporations concerned and since they were, the appellant had no basis on which to object to their admission." *Id.* (emphasis supplied).

The appellants urge that *Goldberg* is distinguishable because of its alternative holding, *viz.,* that the records involved were corporate and not personal. In doing so they disregarded our critical holding that the documents there concerned "were clearly admissible" under *Burdeau,* because of the absence of "governmental action."

The *Burdeau* doctrine has been given effect in the cases cited in the margin.[3]

The vitality of *Burdeau* is attested to by its recent citation and application in Couch v. United States, 409 U.S. 322, 331–332 n. 14, 93 S.Ct. 611, 34 L.Ed.2d 548 (1973).

*Burdeau's* holding that the Fourth Amendment's protection "applies to governmental action" was recently re-affirmed in United States v. Calandra, 414 U.S. 338 (1974) in this statement at page 354, 94 S.Ct. 613, at page 623, 38 L.Ed.2d 561:

> "The purpose of the Fourth Amendment is to prevent unreasonable *governmental intrusions* into the privacy of one's person, house, papers, or effects. The wrong condemned is the unjustified *governmental invasion* of these areas of an individual's life." (emphasis supplied).

Meister's contention that Abend's purloining of the Steelcraft documents "can be imputed to the Government" because it was allegedly in consequence of Treasury Regulations providing for payment of an informer's fee is utterly without merit since the record clearly establishes that Abend acted without the Government's knowledge.

Meister's further contention that the Government's removal of the Steelcraft records from the Abend home without a search and seizure warrant violated his Fourth Amendment rights is likewise without merit.

■ The record discloses that Mrs. Abend acquiesced in the search for, and removal of, the records. It is well-settled that the Fourth Amendment is not violated where a warrantless search "is conduct pursuant to consent." Schneck-

loth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

In *Schneckloth* it was said at pages 231–232, 93 S.Ct. at page 2050:

> "Consent searches are part of the standard investigatory techniques of law enforcement agencies. They normally occur on the highway, or in a person's home or office, and under informal and unstructured conditions."

It may be noted parenthetically that we recently cited and applied *Schneckloth* in Government of the Virgin Islands v. Gereau et al., 502 F.2d 914 (3d Cir. 1974).

■ *Burdeau's* specific holding that the Fifth Amendment is not contravened by use in a criminal proceeding of incriminating documents stolen from their owner by private individuals, without governmental knowledge or complicity, effectively disposes of Meister's contention that his Fifth Amendment rights were violated in the instant case because he continued to be in "constructive possession" of the purloined documents and thus they could not be used to incriminate him.

As earlier noted, we applied *Burdeau* in *Goldberg,* where records taken by employees were used in the taxpayer's trial for income tax evasion.

*Burdeau* and *Goldberg* were cited and followed in United States v. Harper, 458 F.2d 891, 893–894 (7th Cir. 1971), cert. denied, 406 U.S. 930, 92 S.Ct. 1772, 32 L.Ed.2d 132 (1972), where records of the defendant were obtained by an employee without governmental knowledge or complicity.

*Harper* specifically rejected the contention, made here, that the vitality of *Burdeau* has been impaired by Elkins v. United States, 364 U.S. 206, 80 S.Ct.

---

3. *See, e. g.,* United States v. McGuire, 381, F.2d 306, 313 n. 5 (2d Cir. 1967), cert. denied, 389 U.S. 1053, 88 S.Ct. 801, 19 L.Ed.2d 848 (1968) (dictum); United States v. Valen, 479 F.2d 467, 469 (3d Cir. 1973); United States v. Jones, 457 F.2d 697, 699 (5th Cir. 1972); United States v. Winbush, 428 F.2d 357, 358–359 (6th Cir.), cert. denied, 400 U. S. 918, 91 S.Ct. 179, 27 L.Ed.2d 157 (1970);

United States v. Harper, 458 F.2d 891, 893–894 (7th Cir. 1971), cert. denied, 406 U.S. 930, 92 S.Ct. 1772, 32 L.Ed.2d 132 (1972); United States v. Echols, 477 F.2d 37, 39 (8th Cir.), cert. denied, 414 U.S. 825, 94 S.Ct. 128, 38 L.Ed.2d 58 (1973); Eisentrager v. Hocker, 450 F.2d 490, 492 (9th Cir. 1971); United States v. Harding, 475 F.2d 480, 483–484 (10th Cir. 1973).

1437, 4 L.Ed.2d 1669 (1960). The Second and Ninth Circuits have similarly held that *Elkins* has not impaired the vitality of *Burdeau:* United States v. McGuire, 381 F.2d 306, 313–314 n. 5 (2d Cir. 1967), cert. denied, 389 U.S. 1053, 88 S.Ct. 801, 19 L.Ed.2d 848 (1968); N.L.R.B. v. South Bay Daily Breeze, 415 F.2d 360, 363 (9th Cir. 1969), cert. denied, 397 U.S. 915, 90 S. Ct. 919, 25 L.Ed.2d 96 (1970).

*McGuire* and *South Bay Daily Breeze* held that *Burdeau* precluded claims that records wrongfully taken by private individuals, without Government knowledge or complicity, violated the Fourth Amendment privilege.

Couch v. United States, *supra,* negates Meister's contention that his "constructive possession" of the purloined documents operated to prevent their use as evidence by virtue of the Fifth Amendment proscription against self-incrimination.

*Couch* stressed that the Fifth Amendment is a "personal privilege" which "adheres basically to the person," and "not to information that may incriminate him."

In so holding the Court said in relevant part:

> "It is important to reiterate that the Fifth Amendment privilege is a *personal* privilege: it adheres basically to the person, not to information that may incriminate him. As Mr. Justice Holmes put it: 'A party is privileged from producing the evidence, but not from its production.' Johnson v. United States, 228 U.S. 457, 458, [33 S.Ct. 572, 57 L.Ed. 919] (1913). The Constitution explicitly prohibits compelling an accused to bear witness 'against himself': it necessarily does not proscribe incriminating statements elicited from another. Compulsion upon the person asserting it is an important element of the privilege, and 'prohibition of compelling a man . . . to be witness against himself is a prohibition of the use of

physical or moral compulsion to extort communications from *him,*' Holt v. United States, 218 U.S. 245, 252–253, [31 S.Ct. 2, 6, 54 L.Ed. 1021] (1910) (emphasis added). It is extortion of information from the accused himself that offends our sense of justice." 409 U.S. at 328, 93 S.Ct. at 616.

While we do not reach the question whether the Fourth and Fifth Amendment privileges inure to a civil proceeding for the collection of taxes in light of the fact that we do not here find a violation of these Amendments, it is pertinent to note with respect to Meister's Fifth Amendment claim that when his instant action came to trial in February 1972 he was immune from criminal prosecution for fraudulent evasion of income tax in 1960–1963 by reason of the running of the six-year statute of limitation.[4]

In consonance with what has been said we are of the opinion that neither the Fourth nor Fifth Amendments precluded the Tax Court's admission into evidence of the Steelcraft documents wrongfully removed by Abend and later removed by revenue agents from Mrs. Abend's home with her acquiescence. To hold otherwise would be to disregard the square holding in *Burdeau* that the Fourth and Fifth Amendments do not preclude use in a criminal prosecution of incriminating documents wrongfully taken from their owner without Government knowledge or participation.

United States v. Kasmir, 499 F.2d 444, decided by the Fifth Circuit on August 21, 1974, and other cases cited by Meister in support of his "constructive possession" theory are inapposite on their facts.

■ There remains for disposition Meister's further contention that the Tax Court erred in admitting into evidence Abend's "workpapers" over Meister's "hearsay" objection.

Meister urges that Abend's workpapers and the copies of the bound volumes of invoices, were inadmissible hearsay,

---

4. 26 U.S.C.A. § 6531.

and that the Commissioner's summaries of these invoices, being based on inadmissible hearsay, were likewise inadmissible. He contends that "the only exception" to the hearsay rule "which might possibly apply" to permit the introduction of the workpapers and the bound volumes of invoices "is the business records exception," and that the necessary foundation for the introduction of this evidence as a business record under 28 U.S.C.A. § 1732(a), *i. e.*, that the memorandum or record was "made in the regular course of business" and that "it was the regular course of business to make such a memorandum or record" contemporaneously,[5] was not laid.

We initially note that Meister's hearsay objection is irrelevant insofar as it relates to the deficiency determination for the 1964 tax year, inasmuch as the burden of proof for that year rested on Meister to show that the Commissioner's deficiency determination was incorrect or arbitrary.[6]

■ The Commissioner says that Meister's hearsay objection as to the Abend workpapers "does not warrant reversal" since the workpapers were not necessary to prove the income omissions for the 1960–1963 tax years and, consequently, were "merely cumulative" evidence. We agree with the Commissioner's description of Abend's workpapers as "merely cumulative" evidence. There was ample evidence, apart from the workpapers, to sustain the Commissioner's burden of proving fraud for the 1960–1963 tax years, inclusive, based on a comparison of a copy of Steelcraft's accounts receivable record for 1960, copies of Steelcraft's bound invoices covering 1961–1963, and copies of cancelled checks payable to Steelcraft, with the testimony and records of Steelcraft's customers. Thus, assuming *arguendo* that the workpapers were inadmissible hearsay, reversal is not called for under these facts. *See* Masterson v. Pennsylvania R. Co., 182 F.2d 793, 797–798 (3d Cir. 1950).

■ We do not subscribe to Meister's hearsay challenge with respect to the copies of the bound volumes of purportedly Steelcraft invoices.[7]

We note that this hearsay objection has no impact at all on the Commissioner's burden of proof for the 1960 tax year since in lieu of presenting invoices for that year, the Commissioner presented a copy of what purported to be Steelcraft's 1960 accounts receivable ledger, a document found and removed from Abend's home. No objection was raised to this document, other than Meister's "blanket objection" on Fourth and Fifth Amendment grounds to all material obtained from the Abend home.

The hard core of Meister's position is that the copies of the bound Steelcraft invoices were not properly authenticated at the trial so as to permit their introduction into evidence under 28 U.S.C.A. § 1732(a), the "business records exception" to the hearsay rule. Meister says that "the bound invoices are hearsay and are not admissible under the business records exception because no one identified them as business records of Steelcraft." The short answer to this contention is that it is just not so. An I.R.S. agent testified that Broder, Meister's accountant and brother-in-law, "identified" the invoices "as their [Steelcraft's] records" in Meister's independent court action to recover the records in the District Court for the District of New Jersey. Pursuant to this court pro-

5. See Rivers v. Union Carbide Corp., 426 F.2d 633, 637 (3d Cir. 1970).

6. See former Rule 32, Tax Court Rules of Practice, Estate of Mazzoni v. Commissioner, 451 F.2d 197, n.1 (3d Cir. 1971).

7. We have grave doubts whether the hearsay objection on this point was appropriately raised below. When the invoices were first introduced into evidence, no objection was made by Meister's counsel. At a later point in the trial, when an I.R.S. agent testified that the invoices were obtained from the Abend home and not from Meister's place of business, Meister's counsel stated: "Based on this testimony, I move to strike all of those cartons of records [referring to the invoices] as not admissible, *not competent*." (emphasis supplied).

ceeding, all of Steelcraft's records held by the I.R.S. were turned over to Steelcraft.[8] The record in the instant case discloses no contention on the part of Meister that the returned records are not Steelcraft records.[9] In light of these circumstances, we are of the view that it is unrealistic to contend that the "business records exception" to the hearsay rule could not be invoked because the necessary foundation was lacking. *See* Carroll v. United States, 326 F.2d 72, 77–78 (9th Cir. 1963); Stillman v. United States, 177 F.2d 607, 618 (9th Cir. 1949).

■ Since the invoices were admissible under the "business records exception," the summaries of those invoices were likewise admissible. Summaries of voluminous business records are admissible in evidence where the records are already in evidence, permitting independent verification of the summaries. *See, e. g.,* United States v. Smallwood, 443 F.2d 535, 539–540 (8th Cir.), cert. denied, 404 U.S. 853, 92 S.Ct. 95, 30 L.Ed. 2d 93 (1971); McDaniel v. United States, 343 F.2d 785, 789 (5th Cir.), cert. denied, 382 U.S. 826, 86 S.Ct. 59, 15 L. Ed.2d 71 (1965); Fairchild Stratos Corporation v. Lear Siegler, Inc., 337 F.2d 785, 794–795 (4th Cir. 1964); United States v. Goldberg, 330 F.2d 30, 43 (3d

Cir.), cert. denied, 377 U.S. 953, 84 S.Ct. 1630, 12 L.Ed.2d 497 (1964); *cf.* 4 Wigmore, Evidence § 1230 (1972).

The foregoing establishes that Meister's "hearsay" objections are without merit.

For all of the reasons stated the decisions of the Tax Court will be affirmed.

8. The testimony was as follows:

"Q Mr. Miller [the I.R.S. agent], were you present in response to Petitioners' court action that required the production of certain records of Steelcraft?

. . . .

"Q In response to this, were any records turned over to Steelcraft, to the Petitioners?

"A Oh, yes.

"Q What records were included in those that were turned over to the Petitioners at this time?

"A I believe all records, except two or three boxes.

"Q I point particularly were the original copies that you made photostatic copies of the invoices included in those that were turned over?

"Q Why were they turned over to the Petitioners?

"A Because they were identified as their records. Mr. Broder identified them as their records, and the Court ordered anything they identified as Steelcraft's was to be turned over to them.

"Q In other words, copies of the invoices that you made copies of yesterday were identified as the records of Steelcraft by Mr. Broder?

"A In effect, yes."

9. We note that the I.R.S. "verified" the invoices by comparing the total sales figures reached by totalling the invoices for the relevant tax years with the sales as reported on Meister's income tax returns. The differences, reasonably reconciled by other factors, e. g., differing discounts to customers, were minimal. Further verification was sought by contacting Steelcraft customers for the relevant tax years and comparing figures on the customers' own records covering dealings with Steelcraft.