SEYMOUR POLLACK, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Pollack v. Commissioner
Docket No. 7174-72.
United States Tax Court
T.C. Memo 1980-2; 1980 Tax Ct. Memo LEXIS 584; 39 T.C.M. (CCH) 830; T.C.M. (RIA) 800002; January 2, 1980, Filed *584 Seymour Pollack, pro se. William M. Gross, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: Respondent determined deficiencies in petitioner's Federal income taxes and additions to tax under Section 6653(b) [1] as follows: Addition to Tax
Year
Deficiency
6653(b)
1965 $ 107,145.39
$ 53,572.70
1968
1,108,681.73
509,340.86
On September 25, 1978, petitioner filed a Motion for Evidentiary Hearing in which he requested that the Court decide whether or not the respondent is relying on illegally obtained evidence, in violation of his Fourth Amendment rights, which may be subject to the exclusionary rule to support respondent's determination of Federal income tax deficiencies and additions to tax under section 6653(b) for the tax year 1968. On October 30, 1978, respondent filed a notice of objection to petitioner's motion. A hearing on the motion was held on November 1, 1978 in Washington, D.C. and the motion was taken under advisement. Subsequently, on November 16, 1978, petitioner *585 filed a supplement to his motion and respondent replied on December 4, 1978. On December 12, 1978 we granted petitioner's motion. Hearings were held on January 11 and 12, 1979 in Washington, D.C., January 29 and 30, 1979 in Newark, New Jersey, and April 11, 12, 13, 25, and 26, 1979 in Washington, D.C. FINDINGS OF FACT During 1969 the petitioner and Robert (Bobby) Baker shared an office at 1028 Connecticut Avenue, Washington, D.C. The office served as headquarters for International Marketing Corporation and Fountainhead International Corporation, two corporations owned by petitioner and not involved in the deficiencies determined by the respondent in this case. Petitioner did not reside in the Washington, D.C. area but lived in Fort Lee, New Jersey. Petitioner and Baker employed Mrs. Georgia Liakakis as a secretary and bookkeeper. Mrs. Liakakis not only served as petitioner's secretary but also acted as an officer of International Marketing Corporation and Fountainhead International Corporation. In November 1969, petitioner surrendered himself in California to begin serving a sentence imposed by a state court on a conviction for fraud. Mrs. Liakakis was thereafter directed *586 by petitioner to close the Connecticut Avenue office and to take charge of certain files and tapes that had been kept there. This material, as it relates to petitioner, consisted of miscellaneous documents, records and checks of International Marketing Corporation and certain personal documents of petitioner. In addition, Mrs. Liakakis took possession of various recordings prepared by petitioner of telephone conversations and other conversations recorded through the use of a special device in his briefcase. After these documents and tapes were removed by Mrs. Liakakis, they were stored in either her apartment or Bobby Baker's residence where she went from time to time because of her continuing employment as a secretary to Baker. If any records of International Marketing Corporation, Fountainhead International or petitioner's were stored in Baker's residence, Mr. Baker was unaware of it. Sometime thereafter, Mrs. Liakakis voluntarily made a number of these documents available to a member of a special congressional committee investigating organized crime. A committee member, James P. Donovan (Donovan), informed Francis J. Cox (Cox), a Special Agent working on the New York-New *587 Jersey Organized Crime Strike Force, that Mrs. Liakakis and certain documents in her possession might be helpful in an investigation being conducted by Cox with respect to Samuel Badalamenti, a purported organized crime figure. Donovan's information with respect to Mrs. Liakakis came from another committee member, Thomas Sullivan, to whom Mrs. Liakakis had made available a number of the documents. On July 12, 1972, Francis Cox met with Mrs. Liakakis at her suburban Maryland residence and received the first in a series of documents and tapes In providing this information, Mrs. Liakakis indicated that she desired some money for the documents and the tapes so provided. however, Cox reviewed the materials given to him and determined that they had no relevance to the investigation he was conducting. Accordingly, no money was paid by Cox to Mrs. Liakakis for any of the documents or tapes. Cox microfilmed some of the documents and returned all of them, together with the tapes, to Mrs. Liakakis. These documents and tapes were subsequently subpoenaed from Mrs. Liakakis in 1973 in connection with another criminal proceeding against petitioner in a stock manipulation scheme involving Control *588 Metals Corporation. Any documents given to either Sullivan or Cox were provided voluntarily by Mrs. Liakakis and no compulsion was exerted to obtain them. Mrs. Liakakis was not a paid government agent. At no time did Cox or Sullivan obtain any of these documents by illegal means. On June 5, 1972, a statutory notice of deficiency was mailed to petitioner at his residence in New Jersey for the 1965 and 1968 tax years. The 1968 deficiency involved income from capital gains resulting from the sale of Dumont corporate stock in 1968 by A.P.T. Corporation, a corporation controlled by petitioner. The 1968 deficiency was prepared in part from materials obtained from a 1968 and 1969 investigation by the Securities and Exchange Commission of alleged stock manipulation in Dumont stock. The S.E.C. obtained its information from the stock transfer agents, the records of brokers, banks, and the Dumont Corporation itself, and from testimony of involved parties. As a result of this information, the S.E.C. secured in 1969 an injunction to prevent petitioner and other individuals from trading in Dumont stock. OPINION Petitioner contends that the respondent has utilized illegally obtained evidence *589 in the preparation of the 1968 deficiency and that such evidence should be excluded from any use with respect to the merits of the deficiency and addition to tax in this case. Moreover, petitioner asserts that the entire 1968 deficiency is predicated on leads coming from such illegally obtained evidence and that any evidence that respondent has is tainted with such illegality. This, petitioner argues, voids the 1968 deficiency, or at least shifts the burden of going forward to the respondent while excluding from admissibility any evidence in respondent's hands with respect to the 1968 deficiency. [2]
*590 The "illegal" evidence that petitioner focuses on is certain corporate and personal documents and tapes allegedly stored in Bobby Baker's residence and allegedly surreptitiously taken in 1971 by Thomas Sullivan. according to Mrs. Liakakis' testimony to this Court, when petitioner was jailed in 1969 she closed his Connecticut Avenue office and removed records and tapes in the office to Mr. Baker's residence for safekeeping. Thereafter, Mrs. Liakakis asserts that she was "pressured" by Sullivan into giving him access to the Baker residence, a place that she frequented from time to time as Baker's secretary. She said she accompanied him to the Baker residence, opened the door and permitted Sullivan and a companion to remove "boxes and boxes" of documents. According to Mrs. Liakakis, Sullivan paid her $2,000 for the documents and instructed her to take a suitcase full of documents and tapes to her home. Thereafter, Cox approached her and examined these documents. Mrs. Liakakis testified that this was the only time that she ever permitted any documents to be taken from the Baker residence. However, on previous occasions Mrs. Liakakis has testified or signed sworn statements attesting *591 that (1) she left all the documents at the office in 1969 and thus never had any documents or tapes in her possession; (2) she did have possession of the documents and tapes and stored them in her home with no mention of Baker's residence; (3) documents and tapes stored in her home disappeared from a suitcase one day and mysteriously reappeared sometime later. Mrs. Liakakis also claimed the protection of the Fifth Amendment when questioned about the same set of documents and tapes in another proceeding in which petitioner was convicted for securities violations. See United States v. Pollack,414 F.Supp. 203 (D.D.C. 1976). In connection with this testimony, Bobby Baker testified that he was not aware that any documents or tapes of petitioner or of his corporations had been stored in his home until 1977. Thomas Sullivan testified at length regarding his contacts with Mrs. Liakakis. He stated that she voluntarily turned over a few documents to him in 1971 and that he never went to the Baker residence to remove any documents, records, or tapes. He testified that he never paid Mrs. Liakakis for any information she provided. He indicated that she claimed to have the *592 documents and tapes in her possession in her apartment. Sullivan, through Donovan, notified Cox that Mrs. Liakakis might be of some assistance in his investigations of purported organized crime figures in New Jersey. Cox testified that although he was authorized to pay Mrs. Liakakis for any valuable information she provided, the documents he received at her residence had no value with respect to his investigations. He disclaimed any positive knowledge of how she was in possession of the documents and tapes and denied any complicity in taking any documents from Baker's residence. [3]
*593 We believe the testimony of Sullivan and Cox on this issue. There is simply no credible evidence of any illegal or improper actions by them. We disbelieve the testimony of Mrs. Liakakis since it is clear that her story has changed numerous times to suit particular needs at a given point. We note that the evening prior to giving testimony before this Court she admitted that she met with petitioner and Baker to discuss her testimony. It is clear from the evidence presented to this Court that the materials at petitioner's Connecticut Avenue office had little to do with his Dumont investments. The office manager, Joseph Gold, and Mrs. Liakakis both testified that International Marketing Corporation and Fountainhead International Corporation were the businesses conducted at the office. Petitioner has provided no evidence that his personal records (checkbooks, deposit slips, etc.) pertaining to his Dumont transactions were kept in his Washington office nor has he demonstrated with any particularity which of the documents in the Connecticut Avenue office could be used as evidence against him in this civil tax proceeding. Rather, the record shows that the 1968 deficiency was based *594 on materials obtained from an S.E.C. investigation of alleged manipulation of Dumont stock. These materials were gathered by the S.E.C. in 1968 and 1969 and consisted of transfer agent records, bank and brokerage house records, Dumont corporate records and testimony of involved parties. The collection of such materials and the scope of the investigation conducted in the New York office of the S.E.C. was testified to at great length by Meyer Goldman, whose testimony we found candid and credible. Such materials were subsequently provided to the Internal Revenue Service for use in determining the 1968 tax deficiency. It is significant that the deficiency notice was issued on June 5, 1972, over a month before Cox contacted Mrs. Liakakis with respect to the documents and tapes that had come from the Connecticut Avenue office. Thus, even if Cox had been involved with the preparation of the deficiency notice, the information was received a month after such notice was issued. We are not certain, however, that Cox was at any stage involved with the determination of petitioner's civil tax liability. It appears that he was working with the Organized Crime Strike Force in the New York-New *595 Jersey region investigating major organized crime figures. During this proceeding the petitioner has continually attempted to associate Cox and the criminal investigation in New Jersey with the determination of his income tax deficiencies for 1968. Although some aspects of Dumont stock sales were involved in the Strike Force investigation as they pertained to other taxpayers, it appears that a subsequent indictment in New Jersey against petitioner involved only his willful failure to file the 1968 A.P.T. corporate return. In any event, petitioner has not shown how any of the material Cox received from Mrs. Liakakis was used in respondent's determination of the 1968 deficiency. In view of our findings and conclusions, [4] we reject petitioner's contention that the deficiency notice was based on illegally obtained evidence. We note that even if petitioner had proved that the Liakakis documents and tapes were utilized in the preparation of the 1968 deficiency and that such documents were illegally obtained by the government, the present rule of excluding such evidence and shifting the burden of going forward in this civil case, Suarez v. Commissioner,58 T.C. 792 (1972), *596 would be subject to renewed scrutiny in light of UnitedStates v. Janis,428 U.S. 433 (1976). We reserved judgment on the continuing viability of our Suarez rule until another day. See Proesel v. Commissioner,73 T.C. No. 44 (December 27, 1979). *597 Petitioner during the course of this proceeding made many accusations against numerous government officials of misfeasance, malfeasance, perjury, suppression of evidence, illegal wiretapping, bugging and general harassment. We think these accusations were designed to demonstrate bad faith activities on the part of the government officials involved in the various investigations of petitioner's activities and as a further basis for suppressing any evidence that the respondent has with respect to the 1968 deficiency. We have reviewed the accusations made by petitioner in light of the evidence received in this proceeding and find his accusations to be totally without merit. In our opinion he has not been subjected to a "witchhunt." In any event, as we continually indicated to petitioner during the hearings on this matter, this Court is not the appropriate forum for rendress of any perceived grievances against government officials. Our sole inquiry in this case is to determine whether the deficiency notice was based on evidence which may be subject to the exclusionary rules. Petitioner has failed to satisfy that burden with respect to the 1968 deficiency. Accordingly, we conclude *598 that the 1968 deficiency determination was not based, directly or indirectly, on any illegally obtained evidence or information. See and compare Proesel v. Commissioner,supra. Therefore, no evidence with respect to such deficiency will be suppressed and the usual burden of proof rules are applicable. Rule 142, Tax Court Rules of Practice and Procedure.
An appropriate order will be entered and the case will be restored to the general docket for trial in due course. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. Petitioner has raised a collateral issue that respondent is willfully suppressing documents necessary for the 1965 deficiency with respect to the gain on the proceeds of a sale of certain securities to the United Security Life Insurance Company. This evidence, petitioner contends, was taken from some filing cabinets located in a New York City office of a Mr. Louis C. Ostrer by the New York City District Attorney's office and subsequently turned over to Federal officials. Allan R. Naftalis, an Assistant United States Attorney investigating Ostrer, testified that he had never heard of petitioner prior to this proceeding and that he never had in his possession any documents requested from the District Attorney's office that related to petitioner. Edward Martin, a revenue agent assigned to the Federal investigation of Ostrer, provided similar testimony. Petitioner is not arguing that the 1965 deficiency was based on this evidence but is merely arguing that suppression of his documents by respondent is hampering his ability to contest the 1965 deficiency. Unfortunately for petitioner, his testimony as to what documents were in the office was vague and inconsistent with his original claims. We credit the testimony of Naftalis and Martin, and we do not believe that petitioner had any documents at Ostrer's office.↩
3. It appears that some of the later documents received by Cox from Mrs. Liakakis may have been personal documents of Bobby Baker. We can only speculate on how Mrs. Liakakis obtained these documents. It is possible, perhaps, that these documents were kept by Baker at the Connecticut Avenue office he shared with petitioner and removed by Liakakis when she closed the office on petitioner's directive. It is also possible that if she did store petitioner's documents and tapes at Baker's residence she may have inadvertently or intentionally taken some of Baker's documents when she provided documents to Cox. Mrs. Liakakis did have access to the Baker home. In any event, the issue of Baker's documents has no relevance to this proceeding and our review of the "Baker" documents indicates that no tax information on petitioner (or Baker) is contained in the documents. Moreover, there has been no showing of any government involvement in Mrs. Liakakis' obtaining documents of petitioner or Baker. There is no credible evidence that Mrs. Liakakis was a paid government agent or that she was pressured into doing any illegal activities. If she did take Baker's documents without permission, she did so on her own, without government involvement. Absent government involvement, the documents would be fully admissible. See Meister v. Commissioner,60 T.C. 286 (1973), affd. 504 F.2d 505 (3d Cir. 1974), cert.denied421 U.S. 964↩ (1975).
4. Further support for our findings and conclusions is found in United States v. Pollack,414 F.Supp. 203 (D.D.C. 1976). In that proceeding petitioner attempted to obtain a new trial of an earlier conviction for mail fraud, wire fraud, sale of unregistered securities and aiding and abetting in connection with a securities fraud scheme involving Control Metals Corporation, a conviction that was affirmed on appeal. United States v. Pollack,534 F.2d 964 (D.C. Cir. 1976). Petitioner argued that his conviction was predicated on materials illegally obtained by a Congressional Committee investigating organized crime or by Francies Cox, a special agent of the Internal Revenue Service. These materials had been originally in petitioner's Connecticut Avenue office and subsequent to his imprisonment in 1969 were in the possession and control of Mrs. Liakakis. The District Court rejected petitioner's argument that any of the materials were either illegally obtained or used in connection with the previous trial in which petitioner had been convicted. Although the District Court limited its scope of inquiry to materials that directly related to Control Metals, it is clear that the same set of operative facts with respect to the materials in petitioner's Connecticut Avenue office and the cast of characters involved exist in the District Court case and in this proceeding. We are in substantial agreement with Judge Gasch's detailed findings of fact and conclusions of law relating to petitioner's assertion that certain materials were illegally obtained in violation of his Fourth Amendment↩ rights.