BARKDULL, Judge.
On the evening of February 11, 1983, the defendant checked into the Bounty Hotel. At the time he asked Mr. Casey, a manager of the hotel, if he had a safety deposit box that his man’s carrying purse would fit into, as it contained a large amount of money and he would like to secure it. Mr. Casey offered to put the purse into the hotel safe with the defendant’s name on it. The defendant agreed to this and the purse was placed in the safe. The next morning Mrs. Casey, who was also a manager of the hotel, was on duty. Another guest wanted some of his money from the safe. Mrs. Casey did not have the key to the safe at that time so she gave him some money from the cash register. Later she obtained the keys and went into the safe to retrieve that guest’s money. In order to do so she had to remove the defendant’s purse. As she removed the purse some white powder fell out. The zipper of the purse was partially open and a gold watch band was hanging out. As she replaced the watch in the purse she observed a plastic bag with white powder in it. She closed the purse and locked it in the safe. Thereafter, being concerned that the white substance was illegal she told her husband about it. Mr. Casey got the purse from the safe and opened it. He also observed the plastic bag with the white powder. He then closed the purse and called the police telling them what he had found. Two officers from the Miami Police Dept, arrived at the hotel and Mr. Casey gave the purse to an Officer Fenner who observed that the purse was partially opened and contained a small amount of a white powder visible around the zipper. Officer Fen-ner, without benefit of a search warrant, then opened the purse finding two or three zip-lock plastic bags containing a white substance, a gold watch and some money. The inside of the purse had white powder in it. Officer Fenner took a small quantity of the powder from the inside bottom of the purse and field tested it for cocaine. The test was positive. The defendant was arrested and subsequently charged with trafficking in cocaine in violation of Section 893.135 Florida Statutes (1981) and possession of a controlled substance (cocaine) in violation of Section 893.13 Florida Statutes *917 (1981). The defendant moved to suppress all evidence found in his purse on the ground that the items were obtained through an illegal search and seizure. The trial court found the warrantless search illegal on the ground that a person has a right to the expectation of privacy in the personal contents of one’s luggage. The trial court further found that the search herein was not a private search but a governmental search which was not justified by the plain view exception. We reverse. Beyond any question, when the defendant turned his purse over to the manager of the hotel he had a reasonable expectation of privacy therein which would render a warrantless search by government agents unreasonable and in violation of the Fourth Amendment to the Constitution of the United States. However, the initial invasion of the defendant’s purse was occasioned by private action. Whether that action was accidental or deliberate and whether it was reasonable or unreasonable, it did not violate the Fourth Amendment because of its private character. The additional invasion of the defendant’s property by the police must be tested by the degree to which they exceeded the private search. The United States Supreme Court was recently confronted with a similar situation in the case of United States v. Jacobsen, — U.S. —, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984),[1] wherein the following was stated:
“When the first federal agent on the scene initially saw the package, he knew it contained nothing of significance except a tube containing plastic bags and, ultimately, white powder. It is not entirely clear that the powder was visible to him before he removed the tube from the box. Even if the white powder was not itself in ‘plain view’ because it was still enclosed in so many containers and covered with papers, there was a virtual certainty that nothing else of significance was in the package and that a manual inspection of the tube and its contents would not tell him anything more than he already had been told. Respondents do not dispute that the Government could utilize the Federal Express employees’ testimony concerning the contents of the package. If that is the case, it hardly infringed respondents’ privacy for the agents to reexamine the contents of the open package by brushing aside a crumpled newspaper and picking up the tube. The advantage the Government gained thereby was merely avoiding the risk of a flaw in the employees’ recollection, rather than in further infringing respondents’ privacy. Protecting the risk of misdescription hardly enhances any legitimate privacy interest, and is not protected by the Fourth Amendment. Respondents could have no privacy interest in the contents of the package, since it remained unsealed and since the Federal Express employees had just examined the package and had, of their own accord, invited the federal agent to their offices for the express purpose of viewing its contents. The agent’s viewing of what a private party had freely made available for his inspection did not violate the Fourth Amendment. See Coolidge v. New Hampshire, 403 U.S. 443, 487-490 [91 S.Ct. 2022, 2048-2050, 29 L.Ed.2d 564] (1971); Burdeau v. McDowell, 256 U.S. 465, 475-476 [41 S.Ct. 574, 576-577, 65 L.Ed. 1048] (1921).
Similarly, the removal of the plastic bags from the tube and the agent’s visual inspection of their contents enabled the agent to learn nothing that had not previously been learned during the private search. It infringed no legitimate expectation of privacy and hence was not a ‘search’ within the meaning of the Fourth Amendment.”
Clearly the police herein did nothing further than the government agents did in United States v. Jacobsen, supra. They examined the contents of the partially opened purse finding exactly what they *918 were told they would find by the hotel manager. Therefore, their actions did not constitute a search within the meaning of the Fourth Amendment. The subsequent clinical test of the white powder did not compromise any legitimate interest in privacy. See United States v. Jacobsen, supra.
Thus the police did not infringe on any constitutionally protected privacy interest that had not already been infringed upon by the private search and the trial court erred in granting the motion to suppress.
Therefore, on the basis of United States v. Jacobsen, supra, the order suppressing the evidence found in the purse is hereby reversed and the cause is remanded to the trial court for further proceedings.
Reversed and remanded.

. While the trial court in reaching its conclusion herein was guided by the case of United States v. Jacobsen, 683 F.2d 296 (8th Cir.1982), it must be noted it did not have the benefit of the opinion of the Supreme Court in United States v. Jacob-sen, supra.