SHIVERS, Judge.
Appellant, State of Florida, appeals the trial court’s order suppressing evidence seized in the appellee/defendant’s apartment. We reverse.
On September 1, 1983, Ms. Joanne Howard, a driver for the Purolator Courier Company, was making her daily pick-up of packages for delivery when she noticed the flap on one of her “Puroletter” envelopes had come open. She picked up the envelope and saw that it contained a plastic bag of white powder. Howard stated the bag “didn’t look right” to her. She contacted her supervisor in Alabama who in turn contacted Investigator Pete Rose of the Fort Walton Beach Police Department. Officer Rose met with Howard approximately one and one half hours later and conducted a field test of the white substance. The substance proved to be cocaine. Both Rose and Howard testified at the suppression hearing that the Puroletter envelope flap was unsealed when Officer Rose arrived.
Since the addressee lived outside of Officer Rose’s jurisdiction, Rose and Howard *1251 contacted Officer Nelson of the Okaloosa County Sheriffs Department and explained the situation to him. The Purolator Company agreed to aid in a “controlled delivery investigation.” Ms. Howard delivered the envelope that afternoon and a search warrant was obtained while surveillance was maintained on the residence. A search of the premises revealed over an ounce of cocaine, 20 grams of marijuana, some Quaalude tablets, and assorted drug paraphernalia. Appellee Palmer was arrested and charged with three counts of possession of a controlled substance.
The defendant filed a motion to suppress the evidence on the grounds that (1) the description of the premises contained in the search warrant was not sufficient, (2) Officer Rose had conducted a warrantless, illegal search and seizure of the Puroletter package, and (3) the evidence seized in the defendant’s apartment was the fruit of the illegal search of the package. The trial court granted the motion, ordering suppression of all evidence seized in the defendant’s apartment under the authority of the search warrant, and held that the defendant had a legitimate expectation of privacy in the contents of the package.
We reverse on the basis of the United States Supreme Court’s decision in United States v. Jacobsen, 466 U.S. 109, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)[1] and State v. Weiss, 449 So.2d 915 (Fla. 3d DCA 1984). In the Jacobsen case, a Federal Express employee opened a damaged box pursuant to company policy regarding insurance claims. The cardboard box contained pieces of crumpled newspaper covering a ten inch tube made of silver duct tape. The employees slit open the tube and found a series of four plastic bags, one inside the other, with the innermost bag containing white powder. Suspecting contraband, the employees replaced the plastic bags in the tube, put the newspapers and the tube back into the box, and contacted federal agents. When the agent arrived, the box was sitting on a desk with the top open. The agent observed that one end of the tube had been slit open. He then removed the four bags, saw the powder, and conducted a field test of the substance which identified it as cocaine. The Supreme Court held that no legitimate expectation of privacy had been infringed, and stated the following:
When the first federal agent on the scene initially saw the package, he knew it contained nothing of significance except a tube containing plastic bags and, ultimately, white powder. It is not entirely clear that the powder was visible to him before he removed the tube from the box. Even if the white powder was not itself in “plain view” because it was still enclosed in so many containers and covered with papers, there was a virtual certainty that nothing else of significance was in the package and that a manual inspection of the tube and its contents would not tell him anything more than he already had been told. Respondents do not dispute that the Government could utilize the Federal Express employees’ testimony concerning the contents of the package. If that is the case, it hardly infringed respondents’ privacy for the agents to reexamine the contents of the open package by brushing aside a crumpled newspaper and picking up the tube. The advantage the Government gained thereby was merely avoiding the risk of a flaw in the employees’ recollection, rather than in further infringing respondents’ privacy. Protecting the risk of misdescription hardly enhances any legitimate privacy interest, and is not protected by the Fourth Amendment. Respondents could have no privacy interest in the contents of the package, since it remained unsealed and since the Federal Express employees had just examined the package and had, of their own accord, invited the federal agent to their offices for the express purpose of viewing its contents. The *1252 agent’s viewing of what a private party had freely made available for his inspection did not violate the Fourth Amendment. See Coolidge v. New Hampshire, 403 U.S. 443, 487-490, 29 L.Ed.2d 564, 91 S.Ct. 2022 [2048-2050] (1971); Burdeau v. McDowell, 256 U.S. 465, 475-476, 65 L.Ed. 1048, 41 S.Ct. 574 [576], 13 ALR 1159 (1921).
Similarly, the removal of the plastic bags from the tube and the agent’s visual inspection of their contents enabled the agent to learn nothing that had not previously been learned during the private search. It infringed no legitimate expectation of privacy and hence was not a “search” within the meaning of the Fourth Amendment.
104 S.Ct. at 1659-60, 80 L.Ed.2d at 97-99. (footnotes omitted)
The Florida Third District reached the same conclusion in a similar fact situation in State v. Weiss, supra. In that case, a hotel employee observed a bag of white powder inside a partially open purse, while she was removing the purse from the hotel safe. After locking the purse in the safe, the employee informed her husband of the situation. He reopened the safe, looked inside the purse, and also saw a bag of white powder. He then closed the purse and called the Miami Police Department. When the police officer arrived and was given the purse by the employee, he observed that it was partially opened and contained a small amount of white powder around the zipper. He opened the purse, discovered several plastic bags of white powder, and field tested a small amount of the powder. The test revealed the substance to be cocaine. Citing Jacobsen, the Third District reversed the trial court’s suppression of the evidence on the basis that the government invasion of the defendant’s property did not significantly exceed the scope of the private search.
As in both Jacobsen and Weiss, the initial search in the instant case was performed by a private party and did not violate the Fourth Amendment. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). Second, the package remained unsealed until the government agent arrived. Third, the government search did not significantly exceed the scope of the private search in that the removal of the plastic bag from the envelope and Officer Rose’s visual inspection of the contents enabled him “to learn nothing that had not previously been learned during the private search. It infringed no legitimate expectation of privacy and, hence, was not a ‘search’ within the meaning of the Fourth Amendment.” United States v. Jacobsen, 104 S.Ct. at 1660, 80 L.Ed.2d at 98-99. Last, the subsequent field testing of the powder did not compromise any legitimate privacy interest. State v. Weiss, 449 So.2d at 918; United States v. Jacobsen, supra.
As an alternative basis for affirmance of the suppression order, the appel-lee/ defendant has asserted that the search warrant was defective for failure to contain an adequate description of the place to be searched. We disagree. In Shedd v. State, 358 So.2d 1117 (Fla. 1st DCA 1978), this court found the search warrant to be insufficient and held that “the description of the place to be searched must be sufficient enough to point out the place to be searched to the exclusion of all others and on inquiry to lead the searching officers unerringly to it.” 358 So.2d at 1118. The warrant in Shedd contained not only the wrong street address, but also described the house as wood frame rather than concrete, and as facing west rather than south. Although the officer found and searched the correct house, based on independent knowledge of its location, this court stated that:
[A]n officer without independent knowledge would have searched an incorrect residence. This can and must be avoided. It can be avoided by obtaining an accurate description of the place to be searched, setting forth this description in the warrant, and then searching the *1253 place described in the warrant. The Constitution requires no less.
358 So.2d at 1118.
Officer Hughes, the police officer who actually executed the warrant in the instant case, admitted at the suppression hearing that he did not use the description in the warrant to locate the premises, but instead was guided through radio contact with the surveilling officers. There is nothing to indicate, however, even though the warrant apparently contained an erroneously described point of beginning, that an officer without independent knowledge of the apartment’s location would have searched an incorrect residence. Further, although it does appear that there were two apartment complexes on the same road with similar names, the warrant specifically named the correct apartment complex and contained a description of the building’s location as well as a description of the location of Apartment No. 324 within that building. We thus find that the description contained in the warrant was accurate and sufficient.
Accordingly, the trial court’s order suppressing the evidence seized in the defendant/appellee’s apartment is REVERSED.
SMITH and WIGGINTON, JJ„ concur.

. We note that the trial court based the suppression order, in part, on Untied States v. Jacobsen, 683 F.2d 296 (8th Cir.1982) and did not have the benefit of the United States Supreme Court's recent reversal of that case.